## Staunton.

## HALSEY, EX'OR V. FULTON AND OTHERS.

### September 11, 1916.

Absent, Sims, J. *

1. DEEDS—*Remainders—Vesting—Opening.*—Where a husband conveys land to a trustee for the benefit of his wife for life, with remainder to his children begotten by such wife, the children take vested remainders. The fact that other children may be born before the remainderman actually comes into the enjoyment of his estate does not affect the vested character of his interest, but merely subjects it to the possibility of having to open up and let in those subsequently born. Nor in such case does the fact that so long as the mother lives there is always a possibility of the remainderman's death in advance of hers prevent him from taking that which in law is recognized as a vested remainder.

2. DEEDS—*Construction—Intention.*—In deeds as in wills the intention of the maker must prevail unless such intention is unlawful. The intention is to be determined in each case by the language employed in the instrument.

3. DEEDS—*Construction—Technical Words—Exception to General Rule.*—As a general rule terms having a fixed and definite technical import must be accorded their technical meaning, but the rule does not apply when in the same instrument qualifying expressions appear which plainly indicate an intention to give such terms a different signification. The exception is as well established as the rule itself, and under its influence the expression "heirs" or "heirs of the body" are frequently held to refer exclusively to children.

4. REMAINDERS—*Vested or Contingent—Doubt—Construction.*—Where the language of the instrument is such as to create a doubt whether a vested or contingent estate was intended, the courts favor a construction which will establish a vested rather than a contingent interest, and will adopt such a construction if they can do so without straining the meaning of words to accomplish that result.

5. DEEDS—*Consideration—Love and Affection.*—An expressed consideration of natural love and affection for the grantees in a deed should be

* Case was submitted before Judge Sims took his seat.

construed, if the context warrants it, to apply to a definite class of persons for whom the grantor would naturally cherish a real affection rather than to a more or less uncertain, unknown and remote class.

6. DEEDS—*Remainders*—*"Heirs"* as *"Children"*—*Case in Judgment.*—In the case in judgment, a husband, in consideration of one dollar cash in hand paid, and the natural love and affection he bore to his wife and their children, conveyed a tract of land to a trustee for the benefit of his wife for life, and the remainder to the heirs of her body begotten by the said husband. At the time of the conveyance one or more children of the marriage were in being. A judgment creditor sought to subject the interest of one of the children who was in being after the termination of the life estate of his mother. The chief question at issue was, whether the remainder was vested or contingent.

*Held:* The term "heirs of her body" as used in the deed meant "children," and that they took vested remainders in the land subject to the life estate of their mother.

Appeal from a decree of the Circuit Court of Grayson county. Decree for the defendants. Complainants appeal.

*Reversed.*

The opinion states the case.

*H. A. Cox, S. B. Campbell,* and *J. D. Perkins,* for the appellant.

*Peters & Lavender* and *W. B. Kegley,* for the appellee.

KELLY, J., delivered the opinion of the court.

The decree under review dismissed, upon demurrer, a bill filed by the complainant, the appellant here, in which the following facts are alleged: In the year 1868, S. M. Fulton, Sr., conveyed a tract of land to a trustee for the benefit of his wife, Mary C. Fulton, "for life and the remainder to the heirs of her body begotten by the said S. M. Fulton, Sr." The consideration moving the said S. M. Fulton, Sr., to make this con-

veyance was "$1.00 cash in hand paid and the natural love and affection he bore Mary C. Fulton, his wife, and their children."

Mary C. Fulton died in the year 1914, leaving the following children by her husband, S. M. Fulton, Sr., to-wit: W. G. Fulton, Mattie Cox, Jennie Hale, S. M. Fulton, Jr., J. K. Fulton, T. R. Fulton, Cread M. Fulton, M. J. Fulton, Caroline K. Fulton and W. C. Fulton.    At the date of the conveyance, W. G. Fulton was in being; and it appears inferentially, though there is no direct affirmative allegation in the bill to this effect, that some, but probably not all, of the other children aforesaid were likewise then in being.

Prior to the execution of the next recited conveyance, the appellant and certain other creditors obtained and duly docketed certain judgments agianst W. G. Fulton. On the 5th of May, 1910, W. G. Fulton sold and conveyed to his brother, J. K. Fulton, his interest in the above mentioned land.

The object of the bill was to subject to the satisfaction of the said judgments the interest conveyed by W. G. to J. K. Fulton; and the first question presented for our determination is whether that interest was a vested or a contingent remainder; it being conceded that if it was a vested remainder the judgments were valid liens thereon.

It is clear that if the limitation had in terms been to the children of S. M. Fulton, Sr., by his wife, Mary C. Fulton, then W. G. Fulton would have taken a vested remainder.    In such a case the fact that other children may be born before the remainderman actually comes into the enjoyment of his estate does not affect the vested character of his interest, but merely subjects it to the possibility of having to open up and let in those subsequently born.    Nor, in such case,

does the fact that so long as the mother lives there is always the possibility of the remainderman's death in advance of hers prevent him from taking that which in law is recognized as a vested remainder. These propositions are perfectly well settled and require no further discussion. See 1 Min. Real Prop., secs. 739, 749, 758; 2 Min. Inst. 396; Fearns on Remainders, pp. 215, 216, 313-314; Tiedman on Real Property, sec. 434, p. 431; *Lantz* v. *Massie*, 99 Va. 709, 40 S. E. 50; Graves' Notes on Real Prop.

It necessarily follows, therefore, that if, as contended by the appellant, the words in the deed, "heirs of her body begotten by S. M. Fulton, Sr.," are equivalent in meaning to "their children," the remainder was vested, and the judgments constituted liens thereon. What, then, is the true construction of the former words? In deeds, as in wills, the intention of the makers must prevail unless such intention is unlawful. *Roberson* v. *Wampler*, 104 Va. 380, 51 S. E. 835, 1 L. R. A. (N. S.) 318. The intention, of course, is to be determined in each case by the language employed in the instrument. It is a well established general rule that terms having a fixed and definite technical import must be accorded their technical meaning; but the rule does not apply when, in the same instrument, qualifying expressions appear which plainly indicate an intention to give such terms a different signification. The exception is as well settled as the rule itself, and under its influence the expression "heirs" or "heirs of the body" are frequently held to refer exclusively to children. *Roberson* v. *Wampler, supra; Commonwealth* v. *Wellford*, 114 Va. 372, 377, 76 S. E. 917; *Morris* v. *Bernard*, 114 Va. 630, 77 S. E. 458, and other authorities cited *infra*. Furthermore, in cases where the language of the instrument is such as to create a

doubt whether a vested or a contingent estate was intended, the courts favor a construction which will establish a vested rather than a contingent interest, and will adopt such a construction if they can do so without straining the meaning of words to accomplish that result. 1 Min. Real Prop., sec. 743; *Lantz* v. *Massie*, 99 Va. 709, 712, 40 S. E. 50. We think it is also true that an expressed consideration of natural love and affection for the grantees in a deed should be construed, if the context warrants, to apply to a definite class of persons for whom the grantor would naturally cherish a real affection, rather than to a more or less uncertain, unknown and remote class. See *Roberson* v. *Wampler, supra*, and *Fountain Co., &c.* v. *Beckleheimer, infra.*

Applying these settled and familiar rules of construction to the case in hand, if the limitation had been merely "to the heirs of the body of Mary C. Fulton," this language would have to be understood in its usual and definite legal signification. But when the grantor added to the words, "heirs of her body," the further words "begotten by the said S. M. Fulton, Sr.," and also indicated that he was moved to make the conveyance by "the love and affection which he bore his wife, Mary C. Fulton, and their children," he showed, as we think, that he intended by his language to designate their children. As was said by the Supreme Court of Indiana in *Fountain County, &c.* v. *Beckleheimer*, 102 Ind. 76, 1 N. E. 202, 52 Am. Rep. 645, cited by Judge Buchanan in *Roberson* v. *Wampler, supra*, "Words deliberately put into a deed, and put there for a purpose, are not to be lightly considered nor arbitrarily put aside. The words in the deed before us were deliberately written in the instrument, are there for a purpose, and are not without meaning. We can assign

them a meaning without encroaching upon any rule of law, and by doing this can give just effect to the intention of the grantor." See also *Lehndorf* v. *Cope*, 122 Ill. 317, 13 N. E. 505, 508. Both of the last named cases are closely related, in some of the questions involved, to the instant case, and afford convincing support for the construction which we have placed upon the language under consideration.

The following extract from the case of *Granger* v. *Granger*, 147 Ind. 95, 98, 44 N. E. 189, 190, 56 L. R. A. 186, 189, is peculiarly applicable here: "What then did the testator mean when speaking of his son, Edwin, and using the words 'heirs of his body, by him begotten, him surviving?' The appellees contend that in using these words the testator referred to children who should be begotten by his son, Edwin, and who should survive him. It must be said that such meaning seems manifest. It is true that the words 'heirs of his body,' standing by themselves, might mean any persons in the line of descent from Edwin, and who might in law be entitled to inherit from him—his issue generally. Certainly, however, the only ones of all such heirs that could be 'by him begotten' would be his own natural born children. A man cannot beget anyone except his own children. He may have numerous heirs, but the only heirs begotten by him are his own sons and daughters. Nor can we pass over or ignore this expressive word. 'To beget' is as strong a term as 'child' itself. It is the act by which a child is brought into being . . . 'To beget,' as defined by Webster, is 'to procreate, as a father or sire; to generate; commonly said of the father.' And in the Century Dictionary the definition given is: 'To procreate; generate; chiefly used of the father alone, but sometimes of both parents.' We therefore conclude that by the use of the

words 'heirs of his body by him begotten, him surviving,' the testator referred to children of his son Edwin."
See also *Ault* v. *Hillyard*, 138 Iowa, 239, 115 N. W. 1030.

Counsel for the appellee suggest that section 2423 of the Code of Virginia would seem to settle the questions here involved, but it is manifest, from what has already been said, that this section, which abolished the rule in *Shelley's Case*, can have no effect upon the present controversy. The limiting words with which we are dealing do not meet the requirements of that rule, and, therefore, neither the rule itself nor the statute abolishing it has any direct bearing upon the questions before us. The rule and its requisites are, however, discussed in many of the authorities above cited, in such a way as strongly to reinforce the decision in the present case.

Having reached the conclusion that the words "heirs" in the deed from S. M. Fulton, Sr., was intended to mean the same as the word "children," thereby, as we have seen, creating a vested remainder in W. G. Fulton, it becomes unnecessary to consider the further question, presented in the argument and briefs, as to whether, if the remainder had been contingent, the judgments would have attached thereto as liens.

The demurrer to the bill should have been overruled, and a decree to that effect will accordingly be entered by this court, and the cause remanded for further proceedings to be had in conformity to the views herein expressed.

*Reversed.*