**BARKLEY et al. v. GIBBS et al.   (No. 7465.)**

(Court of Civil Appeals of Texas.   Galveston.
June 14, 1921.   Rehearing Denied
June 30, 1920.)

**1. Deeds ⊛129(4)—Held to convey life estate with remainder to children.**

A deed conveying land to grantor's daughter and her children, to have and to hold to the daughter for her sole use during her natural life, and at her death to the issue of her body forever, gives to the daughter only a life estate, with remainder in fee to her children.

**2. Trusts ⊛191(2)—Deed held not to authorize trustee therein appointed to sell land.**

A deed appointing the husband of a life tenant as guardian or trustee of the property conveyed, to use it and its proceeds for the benefit of the life tenant and the issue of her body, does not authorize the trustee to sell the property, the expression authorizing the use of the proceeds applying only to the rents and revenues derived therefrom.

**3. Deeds ⊛93—Construed to effect intent of parties.**

The primary rule for construction of deeds is to ascertain the intention of the parties, and technical rules of construction must yield to this primary rule.

**4. Deeds ⊛133(2)—Conveyance of remainder to "children" and "issue of body" conveys to children who survived life tenant.**

Where the granting clause of the deed designated the remaindermen as the "children," and the habendum clause as the "issue of the body" of the life tenant, the expressions children, and issue of the body, are not the equivalent of heirs, but are words of purchase, and not of limitation, so that the remainder passes to the children who were living at the death of the life tenant to the exclusion of those who died during her lifetime.

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Issue of the Body; First and Second Series, Child—Children.]

**5. Tenancy in common ⊛13—Possession by other grantees of portion of tract does not benefit grantee of portion in controversy.**

Where a large tract of land conveyed by a life tenant had been partitioned among the grantees, the actual possession of other portions of that tract by the grantees and their successors holding conveyances thereof does not inure to the benefit of a grantee of a portion who never took possession thereof, 'though the title of the remaindermen to the portion in controversy was the same as their title to the portion adversely held.

**6. Life estates ⊛8—Inclosure of small portion of tract conveyed to another is not notice whole tract is adversely claimed to the other.**

Where a grantee from a life tenant of a portion of a tract of land inclosed with the land described in his conveyance a small portion of the land conveyed to another, and which otherwise was uninclosed, such possession was not notice to the remaindermen of the claim by the grantee of the uninclosed portion of the tract, and does not entitle them to hold by adverse possession more than the small portion inclosed with the other tract.

**7. Adverse possession ⊛58—Must indicate assertion of exclusive ownership by occupant.**

To make possession adverse, it must be of such character as to indicate unmistakably an assertion of claim of exclusive ownership in the occupant.

Appeal from District Court, Madison County; S. W. Dean, Judge.

Trespass to try title by R. W. Barkley and others against Sallie E. Gibbs and another, in which the defendant Susie L. Brooks and her husband were made parties defendant on their warranty.   From a judgment in favor of the defendant Gibbs against all plaintiffs, the plaintiffs appeal.   Reversed, and judgment rendered for plaintiffs against the defendant Gibbs, and for the defendant Gibbs against the defendants Brooks and husband.

See, also, 203 S. W. 161, 227 S. W. 1099.

R. J. Randolph, of Madisonville, and E. A. Berry, of Houston, for appellants.

Dean, Humphrey & Powell, of Huntsville, for appellees.

LANE, J.   This is an action in trespass to try title brought by appellants, R. W. Barkley, R. J. Randolph, Mabel Durst Hail and husband, J. P. Hail, Laura Kittrell and husband, W. H. Kittrell, and H. Durst, Jr., against Mrs. Sallie E. Gibbs and Margaret D. Scales, to recover 216 acres of land situated partly in each of the two counties of Leon and Madison, in the state of Texas.   Mrs. Susie L. Brooks and husband, S. Y. Brooks, were made parties defendant by Mrs. Gibbs on their warranty.   Judgment was in favor of Mrs. Sallie E. Gibbs against all plaintiffs.

Plaintiffs' petition was in the ordinary form of petitions of trespass to try title.   Defendant Margaret Scales filed a disclaimer, and judgment was entered thereon, and therefore no further mention of her will be made in this opinion.

Defendant Mrs. Sallie Gibbs answered by plea of general denial and plea of not guilty, and by special plea she averred that she held a fee-simple title to the land involved in the suit by mesne conveyances from the common source of title, to wit, P. W. Kittrell, down to herself.   She specially alleged that she purchased the land from Mrs. Susie L. Brooks and husband, S. Y. Brooks, and had said parties made parties defendant, and prayed that, in the event judgment should be against her for the land, she should have judgment over against Brooks and wife for her damages.   She also pleaded the statutes of limitation of 5 and 10 years in bar of plaintiff's cause of action.

Brooks and wife, as a defense to Mrs.

Gibbs' alternative suit against them, pleaded a general denial. For further answer they adopted the answer of Mrs. Gibbs as against all the plaintiffs.

It was shown by the undisputed evidence that in 1862 one P. W. Kittrell owned 1,500 acres of land lying partly in Leon county and partly in Madison county, and that on the 14th day of October of that year he conveyed the same to Mary E. P. Barkley and her children by the following instrument:

"The State of Texas, County of ———.

"This indenture, made and entered into this the 14th day of October, A. D. 1862, witnesseth:

"That Pleasant W. Kittrell, of the county of Polk and state of Texas, being desirous to give and secure certain property to my daughter, Mary E. P. Barkley, and her children, the wife and children of David M. D. Barkley, all now of Leon county in state of Texas as heretofore, and in consideration of the sum of ten dollars to me in hand paid the receipt of which is hereby acknowledged and for the natural affection which I bear my said daughter and children, and for other considerations me hereunto moving, have this day given, granted, and conveyed and by this instrument of writing do give, grant and convey unto my said daughter, Mary E. P. Barkley, and her children my following named property, to wit: All of that tract or parcel of land lying in the counties of Madison and Leon on the head-branches of Caney creek it being a portion of the Jaques league and containing fifteen hundred acres. For particular description of metes and bounds of said land reference may be had to a deed for the same from Ralph Graves and his wife, Adeline Graves, to me dated 21st January, A. D. 1855, and recorded in the clerk's office of Madison county, state of Texas, on 29th day of March, A. D. 1855, in Book A, pages 393 and 394, also the following slaves, to wit: Scipio a man, Mary a young woman and her child named Jessee with such increases as she may hereafter have, also Ceasar an old man and his wife Rachel and their son Harrison and his wife Martha and their children Peter, Wisdom and Rosa with their future increase. To have and to hold all the above and aforesaid property, land and slaves to my daughter Mary E. P. Barkley for her sole use, behoof and benefit during her natural life, and at the death to the issue of her body forever. And I do hereby constitute and appoint my son-in-law D. M. D. Barkley the husband of my said daughter Mary E. P. Barkley guardian or trustee of the said within mentioned property and persons, to use said property and its proceeds for the sole use and benefit of his wife Mary E. P. Barkley and the issue of her body.

"In testimony of all which I hereunto affix my hand and seal, using scrawl for seal, day and date above written."

There were born to Mary E. P. Barkley several children, namely, Anna Eliza, R. W., Margaret E., Pleasant Kittrell, Jessie, Goree, and David. There were also other children born to her who died in infancy prior to her death, whose names are not shown.

On the 21st day of July, 1864, Mary E. P. Barkley and husband, D. M. D. Barkley, by their deed of that date, conveyed the 1,500-acre tract of land above mentioned to James B. Durham and T. H. Webb, and on the 21st day of December, 1866, said 1,500-acre tract was partitioned between James B. Durham and T. H. Webb. These two last-named parties conveyed parts of their respective portions of said land to various purchasers, one among whom was M. H. Ford, to whom James B. Durham, on the 19th day of September, 1891, sold 490 acres of that part of the land set aside to him in the partition between himself and T. H. Webb; this 490-acre tract includes the 216-acre tract in controversy in this suit.

In the partition of the estate of M. H. Ford the 490-acre tract conveyed by Durham to Ford was set aside to Susie L. Brooks, née Susie L. Ford, wife of S. Y. Brooks. On the 1st day of September, 1899, Susie L. Brooks, and husband, S. Y. Brooks, by separate deeds, conveyed to M. H. Wells and J. H. Johnson each a part of the said 490-acre tract. These last-named purchasers took possession of their respective lands and occupied the same for more than 10 years prior to the time of filing this suit. On the 9th day of June, 1910, Susie L. Brooks and husband, by their warranty deed of that date, conveyed to appellee, Mrs. Sallie E. Gibbs, the 216 acres in controversy, which is a part of the 490-acre tract set aside to Susie L. Brooks in the partition of the estate of M. H. Ford, for a consideration of $2,160.

Mary E. P. Barkley died in 1900. In or about the year 1904, one J. J. Williams, who had purchased and fenced about 500 acres of that portion of the P. W. Kittrell 1,500-acre tract set aside to T. H. Webb in the partition between him and James B. Durham, inclosed with his own land about 4 or 5 acres of the 216 acres in controversy. After learning of such inclosure Williams was requested by S. Y. Brooks to look after the entire 216 acres, and to keep others from taking timber therefrom. Williams did thereafter let his stock graze upon said 216 acres, and he also took some poles therefrom. The 4 or 5 acres of the 216 so inclosed with Williams' land was in an irregular shape, and near the corner of Williams' land and near his improvements, all of which were on his own land.

The plaintiffs are shown to be the legal owners of the land in controversy, unless the deed from P. W. Kittrell to Mary E. P. Barkley and her children to the 1,500-acre tract conveyed to Mrs. Barkley a fee in an undivided part thereof, or unless by such deed D. M. D. Barkley was empowered to sell the same to Durham and Webb, as he did, or unless they are barred by the statutes of limitation pleaded by the defendant Mrs. Gibbs. In other words, if the deed from

Kittrell to Mary E. P. Barkley has the legal effect to pass the title to the land in controversy to the children of Mary E. P. Barkley and only a life estate therein to her, and if no power is conferred therein upon D. M. D. Barkley to sell such land, then the plaintiffs are shown to be the owners thereof, and should recover, unless barred by the statute of limitations pleaded by the defendants.

The cause was submitted to a jury upon the main charge of the court and special charge No. 1 requested by defendants, as follows:

### Charge of the Court.

"Gentlemen of the jury, I submit this case to you on special issues, but in order that you may understand these special issues, I give you the following instructions:

"By the term 'preponderance of the evidence' is meant the greater weight and degree of credible evidence.

"By the term 'peaceable possession' is meant such possession as is continuous, and not interrupted by adverse suit to recover the estate.

"By adverse possession is meant an actual and visible appropriation of the land, commenced and continued under a claim of right, inconsistent with and hostile to the claim of another.

"Possession can be maintained by the claimant or by another or others holding the same for him, and will extend to the boundaries of the entire tract claimed, although only a part may be actually reduced to possession.

"Bearing in mind the foregoing instructions, I submit to you the following special issues of fact:

"Special Issue No. 1. Do you find from a preponderance of the evidence that the defendant Mrs. Sallie E. Gibbs, and those under whom she claims, and whose estate she holds, has had peaceable and adverse possession of the land in controversy, cultivating, using, and enjoying the same, and paying taxes thereon, if any, and claiming under a deed or deeds duly registered for at least 5 years after the plaintiffs' cause of action accrued and before the filing of this suit, which was on January 22, 1916? And you are instructed in this connection that plaintiffs' cause of action accrued upon the death of Mary E. Barkley, and not before, and you are instructed that the defendant Mrs. Sallie E. Gibbs, and the defendants Mrs. Susie L. Brooks and her husband, S. Y. Brooks, under the partition offered in evidence, could claim under the deed offered in evidence to M. H. Ford, the ancestor of the defendant, Susie L. Brooks.

"Special Issue No. 2. Do you find from a preponderance of the evidence that the defendant Mrs. Sallie E. Gibbs, and those under whom she claims, and whose estate she has, has had peaceable and adverse possession of the lands and premises in controversy, claiming the same under a deed or deeds for at least 10 years after plaintiffs' cause of action accrued, which I have instructed you was upon the death of Mary E. Barkley, and before the filing of this suit?"

### Requested Charge.

"Gentlemen of the jury, At the request of plaintiffs you are instructed that the defense of limitation is an affirmative defense, and the burden is on the defendants to prove such defense by a preponderance of the evidence, and unless they have done so in this case you will find against them in their plea of limitation."

The jury answered both questions propounded by the charge in the affirmative. The trial court thereupon rendered judgment for the defendants against plaintiffs, which judgment contains, among other things, the following recital:

"The court, after due consideration of the pleadings, the evidence, and the argument of counsel, as well as the verdict of the jury upon such special issues, finds that the law and the facts are with the defendants. It is therefore considered by the court that the plaintiffs take nothing by their suit, and that the defendants recover of and from the plaintiffs all costs incurred in this cause, and that defendants have their execution."

From the judgment so rendered all of the plaintiffs have appealed, and by their brief have presented 9 assignments of error. At a former term, this court declined to consider any of such assignments, and affirmed the judgment of the trial court. See 203 S. W. 161. On writ of error the Supreme Court reversed the judgment of this court, and remanded the cause to this court, with directions that it consider the assignments. 227 S. W. 1099. Complying with such directions we now proceed to consider the assignments. We deem it unnecessary to discuss in detail the several assignments as a disposition of the main and controlling issues will render the detailed discussion of the incidental issues raised by the remaining assignments unnecessary.

It is the contention of appellants, first, that the deed from P. W. Kittrell to Mary E. P. Barkley, hereinbefore set out, conveyed to Mary E. P. Barkley a life estate only to the land described therein, and that it conveyed the remainder or the fee to her children, and that it did not confer upon D. M. D. Barkley any power to sell the land, and therefore the children of Mary E. P. Barkley and those holding under them have and hold the legal title to the land sued for, and are entitled to recover in this suit unless they are barred by the statutes of limitation pleaded by appellees; and second, that there was no evidence justifying the submission of the question of limitation as to any part of the land in controversy except the 4 or 5 acres shown to have been inclosed by J. J. Williams for more than 5 or 10 years prior to the filing of this suit.

On the other hand, appellee, Mrs. Gibbs, contends:

First. That the deed from P. W. Kittrell to Mary E. P. Barkley and her children, construed as a whole, vests in the said Mary E. P. Barkley the fee-simple title to the 1,500 acres therein conveyed, and of which the 216

acres in controversy are a part; and, since the appellee Mrs. Sallie E. Gibbs holds said 216 acres under a regular and consecutive chain of title emanating in the deed executed by the said Mary E. P. Barkley and husband D. M. D. Barkley to James B. Durham and T. H. Webb, the judgment should have been against plaintiffs, regardless of the finding of the jury on the question of limitation.

Second. That, if the court should construe the deed from Kittrell to Mrs. Barkley as vesting in the latter a life estate only in the 1,500 acres, and the estate in remainder to the children, then, since the proof shows that several of the children died while minors, and since the said Mary E. P. Barkley and her husband, D. M. D. Barkley, inherited the interest of such of said children as died before the death of the said Mary E. P. Barkley and husband, and since the plaintiffs failed to show from how many of said children the said Mary E. P. Barkley and D. M. D. Barkley inherited, and because the defendants hold under warranty deed all of the estate of the said Mary E. P. Barkley and D. M. D. Barkley, the trial court was left without information as to the exact extent of the interest, if any, of the plaintiffs in and to the land in controversy, and therefore, upon consideration of all of the facts, could have rendered no judgment other than that for defendants, regardless of the findings of the jury on the question of limitation.

Third. That, as the deed from Pleasant W. Kittrell to Mary E. P. Barkley made and constituted D. M. D. Barkley as guardian or trustee of the property therein conveyed, and empowered him to use the same and its proceeds for the benefit of the said Mary E. P. Barkley and the issue of her body, the said D. M. D. Barkley had the right to sell said land and use the proceeds of the sale for the benefit of Mary E. P. Barkley and her children, and that he did so sell said land.

Fourth. That appellants' right to recover the land was barred by the statute of limitation of 5 and 10 years pleaded by appellee.

We think the contention of appellant should be sustained. The material and pertinent parts of the Kittrell deed declare substantially that P. W. Kittrell has given, granted, and conveyed, and by the instrument of writing does give, grant, and convey unto his daughter, Mary E. P. Barkley, and her children, the 1,500 acres of land described; this granting clause is followed by the following clause:

"To have and to hold all the above * * * land * * * to my daughter, Mary E. P. Barkley, for her sole use, behoof and benefit during her natural life, *and at her death* [italics ours] to the issue of her body forever. And I do hereby constitute and appoint my son-in-law, D. M. D. Barkley, the husband of my said daughter, Mary E. P. Barkley, guardian or trustee of said within-mentioned property, * * * to use said property and its *proceeds* [italics ours] for the sole use and benefit of his wife, Mary E. P. Barkley, and the issue of her body."

[1, 2] We hold that the effect of this deed was to convey to Mary E. P. Barkley a life estate only in the 1,500 acres described therein, and the fee thereof to her children who survived her. We also hold that such deed conferred no power upon D. M. D. Barkley to sell said land, and that by the expression "to use said property and its proceeds for the sole use and benefit of his wife, Mary E. P. Barkley, and the issue of her body," meant only that D. M. D. Barkley should use the property and apply the rents and revenues derived therefrom for the sole use and benefit of his wife and the issue of her body, and that it was not intended thereby to authorize Barkley to sell such land.

[3] The rule for the construction of deeds is briefly stated in section 93, pp. 1037, 1038, vol. 8, R. C. L., as follows:

"The court will effectuate the lawful purpose of deeds, as it will of all other instruments, if this can be done consistently with the principles and rules of law applicable. The primary rule to be observed, therefore, is that the real intention of the parties is to be sought and carried out whenever possible, and statutes to that effect are found in many jurisdictions. All rules of construction are simply means to a given end, being those methods of reasoning which experience has taught are best calculated to lead to the intention, and generally no rule will be adopted that leads to the defeat of the intention. So, whatever may have been the earlier doctrine, it is now thoroughly settled that technical rules of construction are not favored, and must not be applied so as to defeat the intention. In modern times the more sensible rule obtains, in all cases, to ascertain and give effect to the intention of the parties as gathered from the entire instrument, together with the surrounding circumstances, unless such intention is in conflict with some unbending canon of construction or settled rule of property, or is repugnant to the terms of the grant. Furthermore, the primary or dominant intent must prevail over a secondary intent, where the two are inconsistent, wherefore, if two clauses are inconsistent they must be construed so as to give effect to the intention of the parties as collected from the whole instrument."

Applying the rule just stated, we think it clearly appears from the deed under discussion, as a whole, that it was the intention of P. W. Kittrell, who executed the same, to convey the fee to the land described therein to the issue of the body of his daughter, Mary E. P. Barkley, subject only to the life estate conveyed to said daughter, and that there is nothing in the deed which could be properly construed as conferring on D. M. D. Barkley power to sell said land.

[4] Having reached the conclusion that the fee to the 1,500 acres, by the terms of the deed of P. W. Kittrell, passed to the "issue

of the body" of Mary E. P. Barkley, and in view of the contention of appellee Mrs. Gibbs that title to an undivided part of the land passed to such of the children of Mary E. P. Barkley as died in infancy, and that Mary E. P. Barkley and D. M. D. Barkley inherited through them a portion of the 1,500 acres of land, it becomes a pertinent inquiry as to who were embraced in the terms "her children" and "issue of her body" as used in the P. W. Kittrell deed. In other words, were the children who are shown to have died in infancy, and perhaps, in so far as shown by the evidence, before P. W. Kittrell executed the deed under discussion, to be considered as embraced in the terms "her children" and "issue of her body"? Or was it the intention of P. W. Kittrell in executing the deed that the fee to the land should pass to such of the issue of the body of Mary E. P. Barkley as should survive her? That P. W. Kittrell intended that the land should become the absolute property of the issue of the body of Mary E. P. Barkley after her death can hardly be seriously questioned. We think it well settled that "children" is never used in a deed as the equivalent of "heirs." "Children" is "usually a word of purchase, and not of limitation, whether in the granting clause, premises, or habendum, unless the context in which it is used requires a contrary conclusion, which, however, is not the case where the grant is to one 'and her children.' " The word "issue" is likewise usually a word of purchase. 8 R. C. L. p. 1055, § 108, and authorities there cited.

Considering the deed, then, as a whole, we think it clearly indicates that it was the intention of P. W. Kittrell thereby to convey the fee to the land described therein to the issue of the body of Mary E. P. Barkley who survived her, subject only to her life estate. In using the phrases "the children," "the issue of her body," found in the deed, P. W. Kittrell evidently had in mind a certain class of persons, viz. such "children" or "issue of the body" of Mary E. P. Barkley as should survive her. Hopkins v. Hopkins, 103 Tex. 15, 122 S. W. 15, 16; 28 R. C. L. p. 264, § 238.

"Although, as has been seen, the general rule favors the death of the testator as the time for fixing the membership in a class, there are numerous decisions to the effect that, where distribution is to be made among a class upon some contingency or at some time subsequent to the testator's decease, then those, and those only, who belong to the class when such time or contingency arrives are entitled to share in the distribution. The gift of property to a class of persons, distributable at a time subsequent to the death of the testator, is construed as including all persons in being at the time appointed for the distribution who belong to the class, whether born before or after the death of the testator, except when a different intention appears from the will." 28 R. C. L. p. 264, § 238.

Having disposed of all questions relative to the effect of the P. W. Kittrell deed, we now return to the consideration of the question of limitation. As before stated, it was shown that some 12 or 15 years before the institution of this suit one J. J. Williams, who had purchased and inclosed under fence about 500 acres of that portion of the Kittrell 1,500-acre tract set aside to T. H. Webb in the partition between him and James B. Durham, moved his fence out so as to inclose with his own land about 4 or 5 acres of the 216 acres in controversy. Said 4 or 5 acres so inclosed was in an irregular shape, near the corner of the land of Williams, and near his residence and other houses situated entirely on his own land.

After the death of M. H. Ford, and after Mrs. Susie L. Brooks had become the owner of the 490 acres formerly owned by M. H. Ford, her husband, S. Y. Brooks, on learning that Williams had inclosed said 4 or 5 acres, permitted him to keep the same under his fence upon the promise of Williams to look after the remainder of the 216 acres and to see that no one took timber therefrom. Williams used the 4 or 5 acres in connection with his own premises from the time he fenced the same up to the time of filing suit by appellants, a period of more than 10 years. Williams testified that when he fenced the 4 or 5 acres he knew it did not belong to him, but he thought the owner would not object to his fencing and using the same. The remainder of the 216 acres was uninclosed.

[5] Appellee Mrs. Gibbs contends that if appellants were the owners of the 216-acre tract sued for they were by the same title, the P. W. Kittrell deed, the owners of the entire 1,500 acres conveyed by said deed, and that the actual adverse possession of Williams, Wells, Johnson, Dickey, and others, who had each purchased several portions of said 1,500-acre tract, by deed specifically describing each portion, should not be distinguished from the actual possession held by Williams for Brooks of the 216-acre tract in controversy, and that the possession and claim of these several purchasers of their respective tracts, under their several deeds, and the payment of taxes thereon, should be considered in determining whether the facts proven were sufficient to charge appellants with notice that the land was being held adversely to them, and especially the 216 acres in controversy.

To these contentions we cannot agree. While it is true that the possession and use by Williams, Wells, Johnson, and others of their respective tracts, which were particularly described in their several deeds, were sufficient to advise appellants that lands so described and possessed were being held adversely to them, we can hardly conceive that

such possession and use could tend to advise appellants that such holders and possessors were claiming or intended to claim any portion of the 1,500 acres not embraced within the boundaries named in their respective deeds. But, to the contrary, the only reasonable conclusion which could be reached from such facts would be that these parties intended to claim only such land as was described in their several deeds, and of which they had taken possession. Evidently such possession by these parties cannot be construed as a holding and possession of any lands not described in such deeds, and of which no possession was taken for themselves, and by no stretch of imagination could such holding be construed as a holding for Brooks and wife, or those claiming under them, of any part of the 216 acres in controversy.

[6, 7] Nor can we agree that the fact that other parties had purchased and taken possession of the land so purchased would be notice to appellants that Williams, by inclosing the 4 or 5 acres of the 216 acres in controversy, intended to claim for himself or others the whole of said 216 acres adversely to appellants. We do not think that the evidence was sufficient to justify the court in submitting to the jury the question of limitation as the same relates to that portion of the 216 acres not within the inclosure of Williams. While the true owner is charged with knowledge of the location of the boundaries of his land, he cannot be affected with notice that an adjoining proprietor, such as Williams was in the present case, has encroached by his fence a short distance over the line for the purpose of acquiring 216 acres of his land under the statute of limitation. To make possession adverse, it must be of such character as to unmistakably indicate an assertion of claim of exclusive ownership in the occupant. Bracken v. Jones, 63 Tex. 184; Bender v. Brooks, 103 Tex. 329, 127 S. W. 168, Ann. Cas. 1913A, 559; Bartine v. McElroy, 58 Tex. Civ. App. 16, 123 S. W. 1174; Callen v. Collins, 56 Tex. Civ. App. 620, 120 S. W. 547; Jones v. Weaver, 122 S. W. 619.

For the reasons pointed out we have reached the conclusion that the trial court erred in submitting the question of limitation, in so far as it relates to so much of the land in controversy as was not within the inclosure of Williams, and that judgment should have been rendered for appellant for all that part of said 216 acres not within such inclosure, and that judgment should have been also rendered in favor of Mrs. Sallie E. Gibbs against S. Y. Brooks and wife, Susie L. Brooks, upon their warranty for the sum of $2,160, same being the sum paid by Mrs. Gibbs to Brooks and wife as purchase money for the land in controversy,

together with 6 per cent. interest per annum thereon from date of such payment until the same is repaid.

It is therefore ordered that the judgment of the trial court be and the same is hereby reversed, and judgment is here rendered for appellants for the 216 acres of land described in their petition, except, however, the 4 or 5 acres shown to have been within the inclosure of J. J. Williams.

Judgment is also here rendered in favor of Mrs. Sallie E. Gibbs upon her cross-bill against her codefendants, S. Y. Brooks and Mrs. Susie L. Brooks, upon their warranty for the sum of $2,160, same being the sum paid by Mrs. Gibbs to said codefendants for the land in controversy, together with 6 per cent. per annum interest thereon from the 9th day of June, 1910.

Reversed and rendered.