**GIBBS v. BARKLEY et al.　(No. 328–3680.)**

(Commission of Appeals of Texas, Section A. June 21, 1922.)

**1. Deeds ☞93—Intention controls construction.**

That construction of a deed which effectuates grantor's lawful intention, controls.

**2. Deeds ☞95—Grantor's intention to be gathered from entire instrument.**

Grantor's intention must be gathered from a fair construction of the entire instrument, each clause or paragraph of which must be construed with reference to every other paragraph.

**3. Deeds ☞129(4)—Deed held to convey life estate only to first taker.**

A deed granting to grantor's daughter and her children "my following named property," describing it, "to have and to hold * * * for her sole use, behoof and benefit during her natural life and at her death to the issue of her body forever," *held* to create a life estate only in the daughter; for the granting clause, which, standing alone, would vest a fee simple in her and the children, should be construed with the habendum clause.

**4. Deeds ☞97—Clause not revoked if reconcilable with repugnant clause to effectuate intent.**

A clause in a deed will not be revoked because inconsistent with another clause, if it is capable of being reconciled with the repugnant clause in order to effectuate grantor's intention.

**5. Deeds ☞133(2)—Deed held to vest fixed interest in children living at date of execution; "now."**

A deed granting to grantor's daughter and her children, "all now of Leon county in the

state of Texas," in consideration of $10 cash and "the natural affection which I bear my said daughter and children," certain property, for the daughter's sole use and benefit for her life, "and at her death to the issue of her body forever," conveyed a fixed interest vesting in the children living at the date of its execution, to take effect in possession on the termination of the life estate, and the interests of children dying before the death of the life tenant did not lapse in favor of surviving children, but descended to the deceased children's heirs; for a limitation to those children in existence at the date of the instrument was implied from the expression of "natural affection" and from the use of the word "now," which denotes present time and signifies separation or setting apart of an indicated date from that of any past or future date as a point of reference.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Now.]

**6. Trusts ☞134—Deed appointing life tenant's husband as trustee to use property and "proceeds" for her sole use and benefit held not to vest title in him as trustee; "product"; "yield"; "income"; "receipts"; "return."**

Under a deed conveying a life estate to grantor's daughter with remainder to her children, a concluding clause appointing the daughter's husband trustee to use the property and its "proceeds" for the sole use and benefit of his wife and the children did not vest title in him as trustee, no words of conveyance being contained therein, and the word "proceeds," which is synonymous with "product," "yield," "income," "receipts," and "return," being employed in the sense of income from the property, which the trustee had power to manage and control, rather than to confer a power of sale.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income; Proceeds; Product; Receipts; Return; Yield.]

**7. Life estates ☞23—Deed from life tenant and husband held to pass only former's life estate and interest inherited from children predeceasing grantors.**

Where land was conveyed to a woman for life with remainder to her children then living, a deed thereof by the woman and her husband conveyed only her life estate and such interest as she and her husband inherited from the children having an interest who predeceased them.

**8. Trespass to try title ☞41(1)—Plaintiffs must establish title to definite interest and defendant's lack of title to any interest.**

In trespass to try title, plaintiffs must establish their title to a definite interest, whether it be the whole interest sued for or a less interest, and cannot recover exclusive possession unless they establish. not only their own title to an undivided interest, but also that defendant has no title to any interest.

**9. Remainders ☞17(3)—Limitation held not to run against remaindermen until death of life tenant.**

Under a deed conveying a life estate to grantor's daughter with remainder to her chil-

dren then living, where the life tenant and her husband, as trustee for her and the children's use and benefit, conveyed the land by a fee-simple deed, limitation did not begin to run against the remaindermen in favor of the grantees and their successors in possession until the death of the life tenant.

**10. Life estates ☞8—Adverse possession by one grantee of part of tract within larger tract does not inure to benefit of grantee of separate portion of larger tract.**

As respects claim of adverse possession against remaindermen, adverse possession by one grantee of grantee of life tenants of a distinct portion of a tract of land bounded by metes and bounds out of a larger tract does not inure to the benefit of another grantee of a separate and distinct portion of the larger tract; there being no privity between them as tenants in common or otherwise.

**11. Appeal and error ☞1083(6)—Court of Civil Appeals' action in reversing cause for insufficiency of evidence is not subject to review by Supreme Court.**

The action of the Court of Civil Appeals in reversing a cause for insufficiency of the evidence to justify submission of a question to the jury involves only a question of fact over which its jurisdiction is final, and not a question of law, which the Supreme Court may review.

**12. Appeal and error ☞1114—Supreme Court must remand cause in which Court of Civil Appeals erroneously rendered judgment on reversal for insufficiency of evidence.**

Where the Court of Civil Appeals, on reversing a judgment for insufficiency of the evidence to justify submission of a question to the jury renders judgment instead of remanding for another trial, the Supreme Court must remand.

**13. Life estates ☞8—Whether possession had ripened into title by limitation held for jury.**

Whether possession of an inclosed portion of a larger tract of land by one claiming the whole under mesne conveyances from a life tenant and her husband had ripened into limitation title, if adverse, under either the five or ten year statutes, *held* for the jury under the evidence.

**14. Life estates ☞8—Tenancy in common ☞15(7, 8)—Persons in possession under claim of title by fee-simple conveyances from life tenant not tenants at sufferance.**

Persons in possession claiming title under a regular chain of title from a life tenant and her husband, consisting of fee-simple conveyances describing the land by metes and bounds and duly registered before the life tenant's death, *held* not tenants at sufference in subordination to the legal title of the remaindermen so as to bar acquisition of title by adverse possession after death of life tenant; the registration of such deeds, even if the relationship of tenancy in common arose on the termination of the life estate, being notice to the record owners of such adverse claim.

**15. Adverse possession** ☞14—**Notice of adverse claim is not sufficient to set statute in operation.**

To set the statute in operation, notice of an adverse claim is not sufficient, as there must also be such adverse possession as will satisfy the statute.

**16. Life estates** ☞8—**Tenancy in common** ☞14—**Uninterrupted possession 'under claim to entire interest based on recorded fee-simple deeds from life tenant is ouster of remaindermen claiming as tenants in common under deed to life tenant.**

Entry and adverse possession under a claim to the entire interest predicated on recorded fee-simple deeds from the life tenant and her successors in interest, if such possession is uninterrupted or its character unchanged by the termination of the life estate, is an ouster of remaindermen claiming under the deed to the life tenant; no relationship of tenancy in common between such remaindermen and the life tenant's grantees being recognized by the latter, though by some affirmative act or by failing to meet the requirements of the statute they could disavow their intention of claiming the entire interest and thereby recognize the remaindermen as cotenants.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by R. W. Barkley and others against Mrs. Sallie E. Gibbs. Judgment for plaintiffs (233 S. W. 134), and defendant brings error. Reversed and remanded.

Dean & Humphrey, of Huntsville, for plaintiff in error.

R. J. Randolph, of Madisonville, for defendants in error.

SPENCER, P. J. Defendants in error sued plaintiff in error in trespass to try title to recover the 216-acre tract of land described in the pleadings. Pleasant W. Kittrell is the common source of title. Defendants in error are claiming the land, as heirs of Mary E. P. Barkley, a daughter of P. W. Kittrell. Plaintiff in error asserts ownership in virtue of mesne conveyances from the common source of title down to and into herself. Included in her chain of title is a deed from Mary E. P. Barkley and D. M. D. Barkley, conveying the 1,500-acre tract described in the conveyance from Kittrell to Mary E. P. Barkley and her children, hereinafter set out, of which the land in controversy is a part. She also pleaded the statute of limitations of five and ten years. The controversy involves a construction of the following instrument:

"That Pleasant W. Kittrell of the county of Pollock and state of Texas, being desirous to give and secure certain property to my daughter Mary E. P. Barkley and her children, the wife and children of Dave M. D. Barkley, all now of Leon county in the state of Texas, as before; and in consideration of the sum of $10.00 to me paid, receipt is hereby acknowledged; and for the natural affection which I bear my said daughter and children and for other considerations hereunto moving, have this day given, granted, and conveyed and by this instrument of writing do give, grant, and convey unto my said daughter Mary E. P. Barkley and her children my following named property, to wit: (Here follows a description of the property.) * * *

"To have and to hold all of the above and aforesaid property, land, and sla s to my daughter Mary E. P. Barkley for her sole use, behoof, and benefit during her natural life, and at her death to the issue of her body forever. And I do hereby constitute and appoint my son-in-law D. M. D. Barkley, the husband of my daughter Mary E. P. Barkley, guardian or trustee of the said within mentioned property and persons to use said property and its proceeds for the sole use and benefit of his wife Mary E. P. Barkley and the issue of her body."

Defendants in error contend that the estate created by the instrument was a contingent remainder, vesting upon the death of Mary E. P. Barkley in such of the issue of her body as survived her. Plaintiff in error insists that the instrument created a vested remainder in the children of Mary E. P. Barkley who were in existence at the date of the deed, and that upon the death of any of these children, prior to the death of their parents, the estate so conveyed by the instrument passed to the parents of the deceased children, and that such interest in turn passed directly by the deed executed by the parents or by estoppel because of the warranty of title contained in the deed.

[1, 2] The ultimate purpose in construing a deed is to ascertain the intention of the grantor. When this intention is ascertained, that construction which carries the intention into effect, when such intention is lawful, governs and controls. The intention, however, is not to be gotten from an isolated clause or paragraph, but gathered from a fair construction of the entire instrument. Each clause or paragraph must be construed with reference to every other paragraph, and the effect of one paragraph upon the other determined. Hopkins v. Hopkins, 103 Tex. 15, 122 S. W. 15.

[3] The granting clause, or premises of the instrument, now being construed, would if standing alone vest in Mary E. P. Barkley and the children designated a fee-simple title to the property mentioned in it; but, when construed with reference to and in connection with the habendum clause, it is quite apparent that the estate intended to be created in favor of Mrs. Barkley was one for life.

[4, 5] What estate was intended to be passed to her children? And what children

---

were intended to be included? are the important issues to be determined. Was it the intention of the grantor to create an estate in the children living at the date of the execution of the deed, or was it the intention of the grantor that the remainder was to pass to those children surviving Mary E. P. Barkley.

The use of the words "all now of Leon county in the state of Texas" are very significant in ascertaining the grantor's intent. The word "now" denotes present time. It indicates the historical present. It signifies the separation or the setting apart of an indicated date—the time of speaking or the date of the instrument in this instance—from that of any past or future time or date, as a point of reference. It is epochal in the sense employed by the grantor in the present instance, in that it fixes and determines the casting of the descent of this property. No date, other than the one thus fixed, should be used as a reckoning point in determining the casting of descent, unless from the context of the whole instrument it appears that it was the grantor's intention so to do.

That it was not the intention of the grantor to cast descent upon after-born children is made certain by the language used in the clause wherein he states that the consideration, among other things, is the natural affection which he bears to his daughter and her children. The expression of natural affection implies a limitation to those children in existence at the date of the instrument.

This precise question was before the court of last resort of Virginia, and that court held that an expressed consideration of natural love and affection for the grantees in a deed should be construed, if the contents warrant, to apply to a definite class of persons for whom the grantor would naturally cherish a real affection, rather than to a more or less uncertain and remote class. Halsey v. Fulton et al., 119 Va. 571, 89 S. E. 912; 18 C. J. 275, par. 238.

The words "and at her death to the issue of her body," found in the habendum clause of the instrument, are relied upon as evidencing an intention that only those children of Mary E. P. Barkley surviving her, regardless of the dates of their birth are to take the estate. To so construe the clause is to revoke and annul the grants made to the children living at the date of the instrument. A clause will not be revoked, if it is capable of being reconciled with the repugnant clause; which can be done in this instance and which will be done to effectuate the grantor's intention. Moore v. City of Waco, 85 Tex. 206, 20 S. W. 61.

The use of the term "children" in the granting clause is narrowed, as has been pointed out, to include only those living at the date of instrument. The words "issue of her body" can be reconciled with the grant-

242 S.W.—30

ing clause and the intention of the testator carried out by giving to them a secondary or restricted meaning. That such a construction is not only permissible, but proper, is the concensus of opinion of all the adjudicated cases. Robeson v. Cochran, 255 Ill. 355, 99 N. E. 649; Vale Royal Mfg. Co. v. Santee River Cypress Lbr. Co., 84 S. C. 81, 65 S. E. 955; 18 C. J. 274, par. 237.

The interest granted to the children by the deed was dependent upon the happening of no event or contingency, but vested as of the date of the instrument. It was a fixed interest, to take effect in possession after the termination of the estate of the life tenant. In the event of the death of any of these children before the death of the life tenant, the interest of such child or children did not lapse in favor of the surviving children, but descended to their heirs. Bufford v. Holliman, 10 Tex. 560, 60 Am. Dec. 223.

[6, 7] The concluding clause of the instrument did not vest title in D. M. D. Barkley as trustee. No words of conveyance are contained therein. No power of sale is conferred thereby. The word "proceeds" is the only word in the clause that even suggests any such power, and it is not a word of any fixed or definite meaning, but one of loose and varying significance. It is synonymous with "product," "yield," "income," "receipts," and "return." It has been defined as the amount proceeding or accruing from some possession or transaction. In the light of the provisions of the deed, and the lack of any power, express or implied, in the trustee to sell the property, it was undoubtedly the intention of the grantor to employ the word in the sense of income from the property which the trustee had power to manage and control. It cannot be construed as an implied power of the trustee to sell, for such power of alienation would be destructive not only of the trust imposed by the instrument, but wholly inconsistent with the major purpose of the conveyance—the giving of a life estate to Mrs. Barkley and the vesting of title in the remaindermen. The instrument merely confers upon him the power to manage the property and to use the proceeds derived therefrom for the use and benefit of Mrs. Barkley and her children. The only interest which passed by the deed from Mary E. P. Barkley and D. M. D. Barkley, to their grantees, was the life estate of Mrs. Barkley and such interest as they may have inherited from their children having an interest who may have predeceased them.

The record does not show with any degree of certainty what interest, if any, they inherited from their children, nor does it show a definite interest in the defendants in error.

R. W. Barkley, one of the plaintiffs in the trial court, in testifying enumerated seven children, including himself, who were born to Mary E. P. Barkley and D. M. D. Barkley.

He testified that there were several others born to them but that they all died in infancy. According to his testimony, only two children were living at the date of the trial— one sister, the date of whose birth he did not give, and himself, born in 1852. He gave the date of death of another, but gave the date of birth of none of them. Mary E. P. Barkley died in 1900. The date of death of D. M. D. Barkley does not appear of record.

[8] As this was a trespass to try title suit, it was incumbent upon defendants in error to establish their title to a definite interest, whether it be the whole interest for which they sue, or a less interest; and they are not entitled to recover the exclusive possession of the land unless they establish, not only their own title to an undivided interest, but also that plaintiff in error has no title to any interest. Steddum v. Kirby Lbr. Co., 110 Tex. 513, 221 S. W. 920; Baldwin v. Goldfrank, 88 Tex. 249, 31 S. W. 1064; Davidson v. Wallingford, 88 Tex. 619, 23 S. W. 1030.

[9, 10] The Honorable Court of Civil Appeals (233 S. W. 134) made the following findings of fact, which are necessary to be noticed in connection with the question of limitation presented by the pleadings:

"On the 21st day of July, 1864, Mary E. P. Barkley and husband, D. M. D. Barkley, by their deed of that date, conveyed the 1,500-acre tract of land above mentioned to James B. Durham and T. H. Webb, and on the 21st day of December, 1866, said 1,500-acre tract was partitioned between James B. Durham and T. H. Webb. These two last-named parties conveyed parts of their respective portions of said land to various purchasers, one among whom was M. H. Ford, to whom James B. Durham, on the 19th day of September, 1891, sold 490 acres of that part of the land set aside to him in the partition between himself and T. H. Webb; this 490-acre tract includes the 216-acre tract in controversy in this suit.

"In the partition of the estate of M. H. Ford the 490-acre tract conveyed by Durham to Ford was set aside to Susie L. Brooks, née Susie L. Ford, wife of S. Y. Brooks. On the 1st day of September, 1899, Susie L. Brooks, and husband, S. Y. Brooks, by separate deeds, conveyed to M. H. Wells and J. H. Johnson each a part of the said 490-acre tract. These last-named purchasers took possession of their respective lands and occupied the same for more than 10 years prior to the time of filing this suit. On the 9th day of June, 1910, Susie L. Brooks and husband, by their warranty deed of that date, conveyed to appellee, Mrs. Sallie E. Gibbs, the 216 acres in controversy, which is a part of the 490-acre tract set aside to Susie L. Brooks in the partition of the estate of M. H. Ford for a consideration of $2,160.

"Mary E. P. Barkley died in 1900. In or about the year 1904, one J. J. Williams, who had purchased and fenced about 500 acres of that portion of the P. W. Kittrell 1,500 acre tract set aside to T. H. Webb in the partition between him and James B. Durham, inclosed with his own land about 4 or 5 acres of the 216 acres in controversy. After learning of such inclosure Williams was requested by S. Y. Brooks to look after the entire 216 acres, and to keep others from taking timber therefrom. Williams did thereafter let his stock graze upon said 216 acres, and he also took some poles therefrom. The 4 or 5 acres of the 216 so inclosed with Williams' land was in an irregular shape, and near the corner of Williams' land and near his improvements, all of which were on his own land. * * * The remainder of the 216 acres was uninclosed."

Plaintiff in error contended, which contention the Court of Civil Appeals overruled, that the actual adverse possession of the various tracts of land by the grantees of Durham and Webb, together with the payment of taxes thereon by these grantees, should be considered in determining whether the facts proved were sufficient to charge defendants in error with notice that all these tracts were being held adversely.

In our opinion the Honorable Court of Civil Appeals ruled correctly upon this point. Limitation did not begin to run against the remaindermen until the death of the life tenant in 1900. The adverse possession of one grantee of a distinct portion of a tract of land bounded by metes and bounds out of a larger tract of land does not inure to the benefit of another grantee of a separate and distinct portion of the larger tract. There is no privity between them. They are not tenants in common. Adverse possession by one of them as against the record owners does not as a matter of law constitute him the agent of the other grantees of the common grantor in holding adversely against the record owners.

[11] In response to special issues submitted, the jury found in favor of plaintiff in error upon her claim of the five and ten years statutes of limitation. The Court of Civil Appeals has found that the evidence was insufficient to justify the court in submitting the question of limitation to the jury. That court's action in reversing the cause for the insufficiency of the evidence involves only a question of fact, over which its jurisdiction is final, and not a question of law which the Supreme Court has power to review. Wilson v. Freeman, Receiver, 108 Tex. 121, 185 S. W. 993, Ann. Cas. 1918D, 1203; Patrick v. Smith, 90 Tex. 267, 38 S. W. 17.

[12] The Court of Civil Appeals having determined that the evidence was insufficient, it was its duty to reverse the cause and remand for another trial and not render as it did. Therefore it becomes the duty of the Supreme Court to enter such judgment as the Court of Civil Appeals should have rendered; that is, to remand the cause for another trial. Choate v. S. A. & A. P. Ry. Co., 91 Tex. 406, 44 S. W. 69; Tweed v. Western Union Tel. Co., 107 Tex. 247, 166 S. W. 696, 177 S. W. 957; Wisdom v. C., R. I. & G. Ry. Co. (Tex. Com. App.) 231 S. W. 345.

In view of another trial, it is proper to notice, for the guidance of the trial court, other questions of law presented by the record.

[13] If upon another trial the evidence should be the same, the court should submit to the jury for its determination the question of whether the possession by plaintiff in error of the 4 or 5 acres inclosed, if adverse, had ripened into limitation title.

[14] Defendants in error complain of the court's refusal to instruct the jury in effect that the entry, or possession by plaintiff in error and those under whom she claimed, was taken under a life tenant and in subordination to the legal title, and constituted her and them tenants at sufferance and unless she or they did some affirmative act after the death of the life tenant sufficient to put a reasonably prudent person on notice of an intention to claim a fee-simple title, and that she could not therefore acquire title by limitation.

The proposition of law contained in the charge is, as applied to the undisputed facts, fundamentally wrong. It is undisputed that plaintiff in error claims under a regular chain of title from Mary E. P. Barkley and D. M. D. Barkley down to and including the deed from Brooks and wife to herself. The deeds in this chain of title are fee-simple conveyances, describing the land by metes and bounds, and were all duly registered before the death of the life tenant. It is clear, under this proof, that the grantees were not tenants at sufferance.

[15] Granting that the relation of tenancy in common arose coincident with the falling in of the life estate, the registration of these deeds, in virtue of which plaintiff in error claimed the exclusive title to all entire interest, was notice to the record owners of such adverse claims. Morgan v. White, 50 Tex. Civ. App. 318, 110 S. W. 491 (writ of error denied); Puckett v. McDaniel et al., 8 Tex. Civ. App. 630, 28 S. W. 360 (writ of error denied); Naylor & Jones v. Foster, 44 Tex. Civ. App. 599, 99 S. W. 114. Notice alone is not sufficient; however, to set the statute in operation, there must be in addition such adverse possession as will satisfy the statute.

[16] It is an important issue as to whether the unity of possession, or the right of joint possession, in other words the relationship of tenancy in common, as between the grantees of Mary E. P. Barkley and D. M. D. Barkley and the remainderman, ever existed or was ever recognized by the grantees. If the original entry was made and adverse possession was begun under a claim to the entire interest predicated upon the fee-simple deeds, and such possession, if any, was uninterrupted or its character unchanged by the termination of the life estate, then such relationship was not recognized.

This identical question was decided by the federal Circuit Court of Appeals. The present Chief Justice of the United States Supreme Court, then a member of the Circuit Court of Appeals, in speaking for the court said:

"We come, therefore, to the question whether the defendants began their possession in August, 1860, as tenants in common with the claimants. The circumstances under which Morgan and his grantees began this possession are somewhat different, and we shall consider their cases separately. When the life tenant died, in August, 1860, all but 23 acres of the quarter section was held by persons who claimed exclusive ownership in fee to the pieces they respectively occupied, under deeds from Morgan in fee simple, with covenants of general warranty. They or their predecessors in title had entered under these deeds, and were maintaining possession thereunder when the rights of the claimants accrued. Such an entry and possession is an ouster of all other persons claiming an interest in the land, at and from the time they have a right of entry. It is immaterial that the fee simple deeds under which the entries were made actually vested only the title to a life estate or an undivided interest. The extent of the estate purporting to be conveyed characterizes the entry and subsequent possession, and shows beyond doubt that they were made under a claim to the whole, and were with intent to oust all others asserting an interest. This is well settled by federal and state authorities. [Citing numerous authorities.]

"It is suggested that the fact that these deeds from Morgan were made, and possession begun under them, before the claimants' right of entry accrued, should prevent their having any effect to oust the latter. The contention is without merit. The question is whether the possession of the defendants was adverse after the life tenant died. There was no change in the claim or character of the possession after the life estate determined. It continued as before, and we can only know its nature by reference to the circumstances under which it began and was continued. Thus, the warranty deeds from Morgan prior to the falling in of the life estate are of first importance in showing whether the possession taken by virtue of them was intended to be, and was in fact, adverse, when continued after the time at which claimants' right of entry accrued. There can be no doubt of the correctness of this view, on principle, and the authorities fully support it. * * *"

Elder v. M'Claskey, 70 Fed. 529, 17 C. C. A. 251.

Of course, the grantees could by some affirmative act, or by failing to meet the requirements of the statute as to adverse possession, disavow the intention of claiming the entire interest which the recorded deeds gave notice they were claiming, and thereby recognize the remaindermen as cotenants.

For the reasons indicated, we recommend that the cause be remanded to the district

court for a new trial not inconsistent with this opinion.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.