Hemphill, Cel J.
This cause has been very ably argued. The argument for the appellants is principally confined to a discussion of the grounds upon which judgment was rendered below.
The counsel for the appellees, in his luminous and elaborate disquisition, has extended his researches to other points, aud has exhibited great capacity and industry in his explorations into the ancient learning of the law, much of which has either become obsolete or, at least, is foreign to the laws and jurisprudence of this country.
Independent of the grounds in relation to the necessity of administration on the estates of the deceased, one of the most important points in the argument of counsel was as to the character of the estate in remainder; that is, whether vested or contingent.
Questions of this nature have rarely arisen in this court or State. One reason, probably, is that between 1S21 and 1840 no such estate could have been created. Spain, long afflicted with the most deplorable evils, resulting from her laws of primogeniture and entails of various kinds, by which property was almost looked up from the uses of commerce, in a spirit of thorough reform, in 1821, by one decree swept off all these restrictions, giving, in substauee, the first taker of property full ownership and complete powers of control and disposition.
This became the law of Mexico and of the State of Ooahuila and Texas, aud under it remainders ovei', after a life estate, were void. They were restrictions upon the power of alienation in the tenant for life, and were therefore prohibited. They were known as fidei commissa, or rather as field commissary substitutions, and, as such, were repugnant to law, the first taker, or fiduciary legatee, being entitled to the whole estate.
We have to regret that many of the authorities referred to by counsel are not accessible to the court, and especially the decisions from the State of Tennessee, on which much reliance is placed.
To determine whether the remainder, limited in this bequest, is vested or contingent, we must ascertain the characteristics which distinguish one sort of remainder from the other. A vested remainder is defined to be an immediate right of present enjoyment or a present fixed right of future enjoyment. A grant of an estate to A for life, and, after his death, to B in fee, is a fixed right of future enjoyment in B, and is, consequently, a vested remainder. (4 Kent, 201.) It is a fixed interest, to take effect in possession after a particular estate is spent.
In Moore v. Lyons, 25 Wendell, 119, as cited in 4 Kent, 202, it was hold that in a devise of real estate for life, and after Ins death to three others, or to the survivors or survivor of them, their heirs and assigns forever,>the remain-dermen took a vested interest at the death of the testator. The law favors the construction that remainders are vested at the death of the testator, so as not to cut off the heirs of the remaindermen who may happen to die before the death of the tenant for life. It is the present capacity of taking effect in possession which distinguishes a vested from a contingent remainder. If it be uncertain whether a use or estate, limited in futuro, will ever vest, such use or estate is a contingent remainder. (4 Kent, 202-3-4.)
From these definitions it is quite manifest that the remainder to his own children aud to his step-sou was vested at the death of the testator,'-and did not. remain in contingency until the death of the tenant for life. The use of the expression, to become the property of the remaindermen after the death of Amelia, did not, it is conceived, hold it in contingency until that *287 death. If he liad used the terms, “I give to my wife the property daring her “natural life, and after her death, to iny children,” &c., the remainder would have heen clearly vested. The expressions employed, viz: that the subjects of the bequests were after death to become the property of the persons in remainder, are equivalent and identical in meaning-, and import no more of uncertainty and contingency than do the other terms.
Having determined that the bequest became an actual estate in the legatees at the death of the testator, it follows that the interest of such of the remain-dermen as died before the termination of the life estate descended to their heirs.
Recurring to the special cause of exception, said to have been ruled upon below, the first is the want of an averment of the grant of administration on the estate of Yancy Thornton, the testator, and for the want of such administrator as a party to the suit.
There is nothing substantial in this objection. It is averred that the executor and executrix took out letters testamentary, and whether they did so in fact or not is of no consequence to the present claimants. The tenant for life took the property in possession immediately on the death of the testator. She may have done this in her capacity as executor, though oven that is doubtful. But if it be admitted that the inception of her possession was in her capacity as executrix, yet the presumption is, that as soon as it was ascertained that there where no debts to absorb or reduce her legacy, her possession was changed from its fiduciary character into that of ownership in her own right. The will contains internal evidences that there was no reason for delay in inly-ing over its several bequests. The testator believed that not only would the debts lie paid out of what was owing to him, but that something would be left for division. The doctrine that a formal assent to the payment of the legacy was necessary, or should have been averred, connot be maintained; and if it wore; necessary after the lapse of forty years it must be presumed. This doctrine had reference only to suits for legacies at common law from some supposed legal rights of the executor in the property and the necessity of his asseut to vest the property in the legatee. But in equity (lie executor was not regarded as the real owner of the' property. He was only a trustee holding possession for the purpose of his trust, and was liable and could be sued for legacies, whether he assented to them or not. (Story “Eq., secs. 591, 592, 593.) The administration of the estate of Yancy Thornton must,have long since closed. It is presumed that there is some law in Tennessee, as elsewhere, by which an administra!ion can come to an end; that there is a reasonable period within which its debts must be paid and its legacies satisfied. But it is unnecessary to discuss this objection further, as under the circumstances of this case it has no legal substance or merit.
The next exception is to the want of administration on tire estates of Harriet Thorn! on, Alfred Thornton, Amelia Thornton, and Patsy Bufford, and her husband, William BuiFord.
The objection, so far as it embraces the estates of Patsy Bufford, Alfred and Harriet Thornton, can be disposed of with but little difficulty. Patsy Bufford died in 1821, twenty-four years before the commencement of this suit. Prom this lapse of time we must presume that, if necessary, administration was granted on her estate, and that after successfully accomplishing all its objects it had long since terminated. The debts, if any, against her succession have long been barred, and a grant of administration could now have no other object than a recovery of this very properly by the administrator to bo then turned over to the plaintiffs. It is said that tiie law will not do a vain thing, and if so, it certainly would not permit a grant of administration, as that would be quite preposterous.
There, is a distinction between the right of an administrator to the property of an estate under (he English system of jurisprudence and the statutes of this Stare. In England the real estate descends and vests permanently in the heir, ihe personalty being in abeyance until the appointment of an *288 •administrator, when it vests in liim. Under our former Spanish and Louisiana codes the whole property was vested by acceptance with or without the benefit of inventory in the heirs, or was renounced by them, the appointment of an administrator being a subordinate matter, dependent on circumstances. Whether, after the introduction of the common law, estates of decedents vested ■at once in the heirs before the statute of 184S, it is not necessary to express any opinion. Very clearly by that statute (art. 1221) they did upon the death vest immediately in the heirs, devisees, or legatees. The theory that the personal estate is in abeyance until the grant of administration, was never the law in this State. It vested in its true owners, and required no aid from an administrator to invoke it from the clouds, for no other purpose, perhaps, than 'to transfer it to a legatee.
At common law executors and administrators were regarded as real owners ■of the property, and in fact for a long- period were entitled to the residue after the payment of the debts. And it was not until the statute of 22 Charles II that administrators were definitely compelled to distribute the surplusage •among the next of kin. The doctrine itself no longer exists at common law, but many of its traces are visible on the law of administrations. Ho such ■principles or any resembling them were ever embodied in our various codes of jurisprudence. The heirs testamentary or ah intestaio were always regarded •as the true owners of the succession, and administrators as but trustees, with, ■it is true, important and very enlarged powers and obligations.
Where but a limited period has elapsed since the death of the deceased it would be inconvenient, as a general rule, to permit legatees or distributees to sue strangers for personal property, not for the reason" that they are not really the owners and have no certain interest until after the administration, hutas 'there is a presumption of the existence of the debts, and as they have a prior claim, it is more convenient that the succession be controlled by one responsible agent representing the rights of all interested, and preparing it, after being relieved of all incumbrances, for distribution among its rightful owners. But where time is permitted to run on, where the creditors, if any, will not take measures to enforce payment, the presumption arises that there are no debts, and the real owners in possession of the property or having rights thereto cannot be disturbed in their possessions or thwarted in their actions by attempts at administration for the benefit of creditors whose claims by their own laches and neglect have been forfeited. We are of opinion that there is no necessity for administration on the estate of Patsy Builbrd. Surely her heirs, a quarter of a century after her death, cam sue and recover any property claimed without the extraneous and superfluous aid of an administration. .
These observations apply with equal force to the objection for the want of administration on the estates of Harriet and Alfred Thornton, between whose deaths and this suit there was a lapse of fifteen years.
The objection for the want of administration on the estate of Amelia Thornton, the mother, has not been urged. It does not appear from the face of the petition that plaintiffs claim by representation through the said Amelia.
Another ground of exception is that no administration lias been had on the estate of William Bufford, the father of plaintiffs; and it is contended that by the common law the plaintiffs can claim only through their father’s representatives ; that as husband ho had a right to reduce his wife’s dioses in action Into possession to recover the property as her administrator, but for his own ■exclusive benefit; and that that administration devolved upon his representatives if not taken out during his life. These doctrines may or not have some ■foundation in the laws of Tennessee, the domicile of the deceased intestate. I have not the means of ascertaining whether they are well founded or not. Whether the statute of distributions of the 22d Charles II, with the exxfiana-itory sections from the statutes of frauds and perjuries of the 20th *289 diarios II, has been adopter! in Tennessee is not known. The rights of the plaintiffs on demurrer must be, tested by the laws of this State. The laws of Tennessee are facts which, not being averred in the petition, cannot on exception l)e considered. They can ho recognized and acted on only when proven and established as other facts in evidence at the'trial.
By the laws of this State, as they existed at the death of Patsy, the mother of tiie plaintiffs, and at the commencement of this suit, all her right and interest in this property vested in the plaintiffs as her hcirs-at-law. Tiie husband had no claim therein. Consequently, hi the present aspect of the case, the necessity of administration on his estate is not a subject of examination. In any event, even if the laws of Tennessee be such as they are represented, yet, as there is very little probability that there arc auy debts against William Buil'ord in Texas, letters of administration would be more a matter of form than of substance. Should the plaintiffs deem it advisable, they may cause administration to be taken on the estate of William, and if so, and application is made by him to become a party to this suit, he is required to bo admitted as such, and the suit will proceed jointly in the names as well of the administrators as of tiie present plaintiffs.
There are several points of some interest discussed in argument which I cannot notice; and the examination I have made into those considered has, for the want of authorities, been conducted under great disadvantages.
Reversed and remanded.
Note 102. — Patton v. Gregory, 21 T., 513; Giddings v. Steele, 28 T., 732. But the heirs may bring suit in reference to the homestead without taking out administration. (Sossaman v. Powell, 21 T., 664.