**TIPTON et al. v. TIPTON et al.   (No. 7862.)**

Court of Civil Appeals of Texas. San Antonio. Nov. 30, 1927.

Rehearing Denied Jan. 4, 1928.

**I. Wills ⬡⟶629—Estates in future should vest at earliest moment consistent with express terms of devise.**

Estates in future should vest at earliest possible moment, not inconsistent with express terms of devise.

**2. Wills ⬡⟶634(14)—Remainder to class vests in members alive at death of testator, unless contrary intention clearly appears in will.**

Where a remainder is given to a class, it will vest in members of class who are alive at death of testator, unless contrary intention is clearly evidenced by language of will.

**3. Wills ⬡⟶634(14)—Remainder devised to testator's brothers and sister, being to class of persons then in being, capable of taking, was "vested remainder."**

Remainder estate devised to testator's brothers and sister share and share alike, after life estate to testator's parents, being to class

of persons then in being and capable of taking, was vested remainder; a "vested remainder" being an immediate right of present enjoyment or a present fixed right of future enjoyment, dependent upon existence in being of person or class who would have an immediate right to possession as remaindermen upon termination of intervening estate.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Vested Remainder.]

**4. Wills ⊜634(19)—Will provision that property should vest in remaindermen "after death" of life tenants did not postpone vesting of remainder until life tenants' death.**

Will provision that, after the death of the life tenants property should pass to and vest in remaindermen, did not postpone time of vesting of remainder until death of life tenants, since words "after death" of life tenants, in devise of remainder limited upon life estate, are to be construed merely as relating to time of enjoyment of estate and not to time of its vesting in interest.

**5. Wills ⊜634(1)—Law favors will construction which avoids disinheritance of remaindermen dying before termination of precedent estates.**

Law favors such construction of will as will avoid disinheritance of remaindermen who may happen to die before termination of precedent estates.

**6. Wills ⊜634(8)—Provision that, "in event of" remainderman's death, survivors should take equal share, did not postpone vesting until life tenant's death; "in event of death of."**

Will provision that, "in event of death of one or more of my brothers or my sister (remaindermen), ones surviving shall each take an equal share in said remainder estate," did not disclose an intention on testator's part that remainder should not vest until after death of life tenants, since phrase, "in event of death of" a particular person or persons, in sense here employed, means death of such persons before death of testator; there being nothing in will evidencing an intention that death there referred to meant death occurring after demise of testator.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, In the Event.]

**7. Wills ⊜634(8)—Under will providing that, in event of death of remainderman, surviving remaindermen should take equal shares in remainder, remainder did not vest subject to defeat by remainderman's death before life tenants.**

Under will devising life estate to parents of testator and remainder to his brothers and sister with provision that, "in event of death of one or more of my brothers or my sister, that ones surviving shall each take an equal share in said remainder estate," remainder estate was not vested in testator's brother subject to defeat by his death before that of life tenants, since no contingency was provided in will by which vested estate could be defeated, since

words quoted referred to death of remainderman before death of testator and not of life tenant.

**8. Wills ⊜634(8)—Children of remainderman surviving testator but dying during life tenants' life took remainderman's undivided share in fee of estate.**

Under will providing that property should pass to and vest in testator's brothers and sister share and share alike after death of life tenants, and that, in event of death of one of brothers or sister, that ones surviving should each take an equal share in remainder estate, children of testator's brother, who survived testator but died during life tenants' life, succeeded to deceased brother's undivided share in fee of estate.

Appeal from District Court, Menard County; J. H. McLean, Judge.

Action by Felix Tipton and others against C. H. Tipton and another. From a judgment for plaintiffs, defendants appeal. Reversed and rendered.

Walter Petsch and Alfred P. C. Petsch, both of Fredericksburg, and Templeton, Brooks, Napier & Brown, of San Antonio, for appellants.

Flack & Flack, of Menard, and Mayer & Rowe, of Fort Worth, for appellees.

SMITH, J. The suit involves the construction of the will of H. M. Tipton, deceased, the pertinent provisions of which may properly be stated as follows:

Paragraph 2. That the testator "gives and wills" specific real property, consisting of improved business lots in the town of Menard, to his "mother and father jointly during their natural lives * * * together with all the rights, hereditaments and appurtenances thereto belonging, the said property hereby given to my said mother and father being" further described. That he "intends to give to my mother and father by this request [bequest] and devise all" said property specifically described; "it being my intention that my said mother and father shall have and hold this property jointly during their natural lives, and that in the event of the death of either of them, the one surviving shall have and hold the same during his or her natural life, and that the remainder estate in said property shall pass to and invest [vest] in my [unnamed] brothers and sister as hereinafter stipulated."

Paragraph 3. That "I give and will to my beloved mother and father all of my property * * * other than" said specifically described lots "which are given to them during their natural lives. * * *"

Paragraph 4. That "it is my will and desire, and I hereby direct, that after the death of both my mother and father," that the specific property "given to my mother and father

\* \* \* pass to and vest in my brothers and sister, share and share alike; that is, that my brothers and sister shall each take an equal share therein." That, "in the event of the death of any one of my said brothers or my sister, that the ones surviving shall each take an equal share in said remainder estate. \* \* \*"

Paragraph 5. That "it is my will and desire and I hereby devise that" his debts shall be paid out of the proceeds of his property "other than the lots given herein to my mother and father for and during their natural lives, it being my intention to save the said property so given to them during their lives intact so that they may receive and enjoy the income therefrom."

Paragraph 6. That his executor under the will shall have authority, in order to pay his debts, to sell all his estate "other than the lots herein given my mother and father for and during their natural lives \* \* \* having full confidence that my said executor will see the lots given to my mother and father during their natural lives will not be sold. \* \* \*"

The testator died on May 15, 1915, being survived by his father and mother, the life tenants, and by a sister and four brothers, the remaindermen. Upon his death, the will was probated, and his father and mother went into possession of the particular property as life tenants under the will. After the death of the testator, but while the parents were yet alive, one of the brothers, John Tipton, died, being survived by his two sons. Subsequently, the parents of the testator, who were the life tenants under the will, died, and the two sons of John Tipton, who had survived the testator but died before the death of the life tenants, set up a claim to the interest their father, if still living, would have obtained under the will of the testator. The three surviving brothers of John Tipton, deceased, having purchased their sister's interest in the estate of the testator, claimed the whole of that estate, and brought this action to construe the will, and to remove cloud cast upon their title by reason of the claim of the two sons of John Tipton, deceased. They recovered in the trial court, and this appeal followed.

The appeal presents two major questions of law: First, whether, under the provisions of the will, the remainder estate devised to the brothers and sister of the testator vested in them at the death of the testator, or not until the death of the life tenant; and, second, if it vested at the death of the testator, then was it defeated as to John Tipton by his death during the tenure of the life tenants? Under the first question, if the devise took effect at the death of the testator, then the remainder estate vested at that time in equal shares in each of the brothers and sister, including John Tipton, who was then living; but, if the devise did not take effect until the death of the life tenants, then, under the terms of the will, the entire remainder estate went in equal shares to the surviving three brothers and sister, John Tipton having previously died. Under the second question, if the estate vested at the death of the testator, but was nevertheless subject to defeat by the death of the remainderman during the life tenancy, then the children of John Tipton, appellants herein, were cut off by the death of their ancestor before the death of the life tenants.

[1, 2] Through the operation of ancient and universally applied rules, estates in future should vest at the earliest possible moment not inconsistent with the express terms of the devise, and where, as in this case, a remainder is given to a class, it will vest in the members of the class who are alive at the death of the testator, unless a contrary intention is clearly evidenced by the language of the will. 40 Cyc. p. 1666; Underhill's Law of Wills, § 863 et seq.; Alexander's Wills, §§ 880, 893, 895, 1003, et seq.; Schouler's Wills, §§ 529, 562, 563; Bufford v. Holliman, 10 Tex. 560, 60 Am. Dec. 223; Caples v. Ward, 107 Tex. 341, 179 S. W. 856.

[3] The same authorities define, and distinguish between, vested and contingent remainders, holding with uniform consistency that a vested remainder is an immediate right of present enjoyment, or a present fixed right of future enjoyment, dependent upon the existence in being of a person or class who would have an immediate right to possession as remainderman upon the termination of the intervening estate. The remainder estate in controversy here is brought clearly within this definition of vested estates, since the devise was to a class of persons then in being and capable of taking. And this is true under the authorities cited, even though the estate might be subsequently divested out of the remaindermen by the occurrence of a future contingency provided for in the devise.

[4, 5] It is contended by appellees that, notwithstanding the rule that the law favors the early vesting of future estates, the vesting of the remainder estate in this case was postponed, by the terms of the will, to the time of the termination of the life estate. This contention is grounded upon the provision in the will that "after the death" of the life tenants the property should pass to and vest in the remaindermen, and that as John Tipton, although surviving the testator, died before the life estate terminated, the estate never did vest in him, and he and his heirs were thereby cut off, so that upon the death of the life tenants the whole estate passed to and vested in the remaindermen who survived the life tenants. This construction of the language of the will, however, appears to be contrary to that uniformly adopted and enforced by the authorities, that the words "after the death" of the life tenants, and similar

adverbs of time, in the devise of a remainder limited upon a life estate, are to be construed merely as relating to the time of the enjoyment of an estate, and not to the time of its vesting in interest; and that the law favors such a construction of a will as will avoid the disinheritance of remaindermen who may happen to die before the termination of precedent estates. 40 Cyc. 1667; Alexander's Wills, §§ 895, 1005, 1007, 1010; Underhill's Wills, § 863; Connelly v. O'Brien, 166 N. Y. 406, 60 N. E. 20; Nelson v. Russell, 135 N. Y. 137, 31 N. E. 1008. It was said by Mr. Alexander in his excellent work (section 1010), that "The intent to postpone the vesting of an estate must be clear; it cannot arise from mere inference or construction;" that, "where a particular estate is devised, then later in the same instrument the remainder is disposed of to take effect upon the happening of an event which will determine the prior estate, the words descriptive of such an event occurring in the latter devise will be construed as referring merely to the period of the termination of the preceding estate and not as designed to postpone the vesting of the remainder"; that, "where the devise is to the remainderman 'from and after' or 'after' or 'at' or 'on' the death of the life tenant, or words of similar import are employed, such expressions are construed as relating to the time of the enjoyment of the estate and not as to its vesting, and such remainder is a vested one"; and that "it may safely be said that all estates will be regarded as vested unless a condition precedent thereto is so clearly expressed that it cannot be regarded as vested without doing violence to the language of the will. To effectuate this rule, words of seeming condition are, if possible, to be construed as postponing only the time of enjoyment. In fact, it will be presumed that words postponing the enjoyment of the estate relate to the beginning of the enjoyment of the estate and not to the vesting thereof."

The case of Bufford v. Holliman, supra, appears to be quite in point. In that case the testator left a will, and, among other devises and legacies, bequeathed certain real and personal property to his wife, Amelia, "during her natural life, and at her death to become the property of my own children, as well as of Alfred my wife's son." The question in the case was whether or not the remainder estate vested at the death of the testator, and whether, therefore, the children of one of the remaindermen who survived the testator, but not the life tenant, inherited that interest through their parent. The opinion in the case was written by Chief Justice Hemphill, who said in part:

"To determine whether the remainder, limited in this bequest, is vested or contingent, we must ascertain the characteristics which distinguish one sort of remainder from the other. A vested remainder is defined to be an immediate right of present enjoyment or a present fixed right of future enjoyment. A grant of an estate to A for life, and, *after his death*, to B in fee, is a fixed right of future enjoyment in B, and is, consequently, a vested remainder. 4 Kent, 201. It is a fixed interest, to take effect in possession after a particular estate is spent.

"In Moore v. Lyons, 25 Wendell [N. Y.] 119, as cited in 4 Kent, 202, it was held that in a devise of real estate for life, and *after his death* to three others, or to the survivors or survivor of them, their heirs and assigns forever, the remaindermen took a vested interest at the death of the testator. The law favors the construction that remainders are vested at the death of the testator, *so as not to cut off the heirs of the remaindermen who may happen to die before the death of the tenant for life.* It is the present capacity of taking effect in possession which distinguishes a vested from a contingent remainder. If it be uncertain whether a use or estate, limited in futuro, will ever vest, such use or estate is a contingent remainder.

"From these definitions it is quite manifest that the remainder to his own children and to his stepson was vested at the death of the testator, and did not remain in contingency until the death of the tenant for life. The use of the expression, to become the property of the remaindermen *after the death* of Amelia, did not, it is conceived, hold it in contingency until that death. If he had used the terms, 'I give to my wife the property during her natural life, and *after her death*, to my children,' etc., the remainder would have been clearly vested. The expression employed, viz. that the subjects of the bequests were *after death* to become the property of the persons in remainder, are equivalent and identical in meaning, and import no more of uncertainty and contingency than do the other terms.

"Having determined that the bequest became an actual estate in the legatees at the death of the testator, it follows that the interest of such of the remaindermen as died before the termination of the life estate descended to their heirs." (Our italics.)

This case, by the language used in the will, is clearly brought within the operation of the rule stated, and under that rule the provision that the remainder estate shall pass and vest "after the death" of the life tenants relates to the time of possession and enjoyment of the estate rather than to the time it shall vest as an estate. The remainder estate therefore vested in John Tipton upon the death of the testator, and upon his death intestate the estate went to his children, the appellants herein.

[6] So do appellees also contend that the provision in the fourth paragraph of the will, that, "in the event of the death of one or more of my brothers or my sister, that the ones surviving shall each take an equal share in said remainder estate," discloses an intention on the part of the testator that the remainder estate should not vest until after the death of the life tenants. This contention is untenable because in contravention of the rule that, when used in the sense here employed, the phrase, "in event of the death of" a particu-

lar person or persons, means the death of such persons before the death of the testator. Sanitarium v. Freeman, 102 Tex. 376, 117 S. W. 425, 132 Am. St. Rep. 886, and authorities hereinabove cited. This construction too may be overturned by expressions in the will of a contrary intention, but we see nothing in the will in this case evidencing an intention that the death there referred to meant death occurring *after* the demise of the testator. The language of the provision under consideration is silent as to whether the death there in contemplation meant death before or after the death of the testator, and therefore the case is an ideal one for the application of the rule invoked, that the death referred to contemplated one occurring before, and not after, the death of the testator.

[7] For a like reason, and by the same rule of construction, we overrule appellees' further contention that, if the remainder estate vested in John Tipton upon the death of the testator, it was so vested subject to defeat by his death before that of the life tenants. The remainder estate vested in John Tipton at the time of the testator's death, as we have seen, since it was a vested remainder as distinguished from a contingent remainder. No contingency was provided in the will by which the vested estate could be defeated. It was not contingent upon his survival of his cotenants, nor upon any other contingency. For, as has been shown, the provision in the fourth paragraph of the will, that in the event of the death of any remainderman "the ones surviving shall each take an equal share in said remainder estate," meant the death of any remainderman before the death of the life tenant, and not of the life tenant. In support of their contention, appellees cite the cases of Richards v. Burbank, 201 Mass. 253, 87 N. E. 575, and Caples v. Ward, 107 Tex. 341, 179 S. W. 856. Those cases are not in point, however.

In the Richards Case the devise over was to the testator's six (named) children, subject to a provision that, if either child "should die unmarried and without issue, then the share that such child would take by virtue of the will shall go to and be divided among my surviving children in proportions, and so, if more than one of my said children should die before the decease of" the life tenant. The court held that by the will each of the six children took an undivided one-sixth of the remainder in fee. In this that decision is in full accord with this decision, for there, as here, the devise was a life estate in one, with remainder over to others, "after the death of" the life tenant. But, because of the proviso that, if either remainderman should die *without issue*, his share should be divided among the surviving life tenants, the court held that, although the remainder vested in the remainderman at the death of the testator, the devise was nevertheless defeated by

the death of the remainderman *without issue* before the death of the life tenant, a contingency specifically contemplated in the will. The difference is that in this case no such contingency was provided by which the remainder estate, vested as it was in the remainderman at the death of the testator, could be defeated.

In the Caples Case, cited by appellees, it was provided that, "upon the death" of the life tenant, the testator's wife, and the "termination of the life estate in her hereby created," the estate should "be equally divided between all the named children then living, or their descendants, share and share alike." There the estate was limited by the express words "then living," and the devise was so applied. The court held that the estate in the named remainderman was vested in him at the death of the testator, just as we hold in this case. But there it was further held that, because of the limitation of the estate to the remaindermen "then living"—at the death of the life tenant—the estate was subject to defeat by the death of the remaindermen during the life tenancy, in which event the remainder would pass to his descendants, in accordance with an express provision in the devise. That case is therefore not in point with appellees' contention that John Tipton's estate was defeated by his death during the life tenancy. The provisions in the two wills in this respect are wholly different.

[8] In pursuance of the conclusions stated, we construe the will in question to provide that upon the death of the testator the designated remaindermen surviving him should each take an equal share in fee in the property specifically described in the second paragraph of the will, subject only to the life estate therein devised to the parents of the testator; that, as John Tipton, one of the class of five designated as remaindermen, survived the testator, he took an undivided one-fifth share, in fee, of the estate; that such estate was not defeasible because of his death before that of the life tenants, but that his children, appellants herein, succeeded to that estate by inheritance.

Accordingly, the judgment will be reversed, and judgment here rendered so construing said will, at the cost of appellees in both courts.

## On Motion for Rehearing.

In their motion for rehearing, appellees complain of the omission, from the original opinion, of any consideration of the case of Hay v. Hay (Tex. Civ. App.) 120 S. W. 1045, which appellees urge in support of their contentions. We do not regard that case as having that effect. It was provided in the will there construed that, "after the death of" the two life tenants, "I give and bequeath all my property * * * in fee simple unto the surviving children of" said life tenants.

One of the designated life tenants was unmarried at the time the will was written, so it was provided in the instrument that, if he died without lawful issue, his share of the estate should go to the children of the other life tenant, but that, if he died leaving lawful issue, such issue should take share and share alike with the children of the other life tenant. The then unmarried life tenant afterwards married, and, predeceasing his cotenant, was survived by lawful issue, who were held to take, along with the children of the surviving life tenant. If that decision is at all in point, then its effect is to support the construction we have applied to the will here in controversy.

The motion for rehearing is overruled.