COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| OLA KATHLEEN PARKER, Independent Executor of the Estate of J. LOYD PARKER, III, Deceased, | § § § | No. 08-19-00121-CV |
| Appellant, | § | Appeal from |
| v. | § | the 143rd Judicial District Court of Reeves County, Texas |
| MICHELLE ELISE PARKER JORDAN AND ALLISON RENEE PARKER, | § | (TC#16-03-21432-CVR) |
| Appellees. | | |

## **O P I N I O N**

This is a trespass-to-try-title and declaratory judgment action brought by Ola Kathleen Parker ("Kathy") against her daughters Michelle Elise Parker Jordan ("Elise") and Allison Renee Parker ("Allison") to resolve a dispute concerning the breadth of a conveyance in a 1998 Gift Deed, executed by J. Loyd Parker, III ("Loyd III") (Kathy's husband and father to Elise and Allison), prior to his 2014 death.

In four issues, Kathy contends the trial court erred in granting summary judgment in favor of Elise and denying Kathy's motion for summary judgment because: (1) the gift deed does not clearly and expressly convey the remainder interest at issue and the evidence conclusively established that Loyd III's intent was *not* to convey that interest in the gift deed; (2) alternatively,

even if the remainder interest was *mistakenly* conveyed in the gift deed, Kathy is entitled to reform the language in the gift deed to reflect Loyd III's true intent, and Elise failed to establish as a matter of law that limitations barred Kathy's right to reformation; (3) Kathy raised a fact issue as to whether Elise was estopped from claiming the remainder interest because for 18 years Elise agreed that no such conveyance occurred; and (4) the trial court erred in overruling Kathy's objection to Elise's declaration.

## FACTUAL BACKGROUND

### A.     The Original Cottonwood Interest

The Cottonwood Ranch ("Cottonwood") is located in Reeves and Culberson Counties, Texas. J.B. Young and Loyd Jinkens owned Cottonwood in equal, undivided 1/2 interests. When Young died in 1956, his daughter Ruthie Young Parker ("Ruthie") inherited an undivided 1/6 interest in Cottonwood in trust as her separate property. In 1957, Ruthie and her husband, J. Loyd Parker, Jr. ("Loyd Jr."), purchased Jinkens' undivided ½ interest. Ruthie and Loyd Jr. then collectively owned an undivided 2/3 interest in Cottonwood as follows:

| Owner | Nature of Interest | Percentage |
|---|---|---|
| Ruthie | Separate-acquired in 1956 (Held in Trust) | 16.66% (1/6) |
| Loyd Jr. and Ruthie | Community-acquired in 1957 | 50.00% (1/2) |
| | Total | 66.66% (2/3) |

### B.     The 1985 Life Estate

When Loyd Jr. died in 1985, his will devised "all of [his] estate, both real and personal, and both community and separate, to [his] wife [Ruthie] in a life estate with remainder to **[his]** children, J. Loyd Parker, III and Pamela Parker Clifton, equally, or to their issue, per stirpes." The will further expressly reserved "broad" and "unfettered" powers to Ruthie as the life tenant to:

2

[B]uy, sell, mortgage, lease for any term both surface and minerals, even though it extends beyond her life tenancy . . . and may otherwise deal with, manage, and control the assets as if she owned them in fee simple and without joinder by any remaindermen and without consultation with any remaindermen, nevertheless preserving the corpus for the remainder. . . directing only that interest in the corpus and proceeds from sale or mortgage of the life tenancy be preserved for the remaindermen . . . .

In case of doubt over authority to act, the doubt shall be resolved in favor of my spouse having full authority without joinder by the remaindermen.

After Loyd Jr.'s death, Cottonwood was owned by Ruthie as follows:

| Owner | Nature of Interest | Percentage |
|-------|--------------------|-----------| 
| Ruthie | Separate – acquired in 1956 (Held in Trust) | 16.666% (1/6) |
| Ruthie | Separate—acquired in 1957 (Ruthie's 1/2 of former community interest) | 25.00% (1/4) |
| Ruthie | Life Estate —acquired in 1985 (remainder to Loyd III and Pamela) | 25.00% (1/4) |
| | Total | 66.666% (2/3) |

## C. Ruthie Conveys Her Separate ¼ Interest Acquired in 1957 to Loyd III and Pamela in a 1990 Warranty Deed and 1993 Correction Deed

In 1990, Ruthie deeded her undivided ¼ interest, acquired in 1957, to Loyd III and Pamela in equal shares (the "1990 Deed"). In 1993, Ruthie signed a Correction Deed to correct the description of the property and to clarify that the 1990 Deed conveyed only Ruthie's undivided ¼ interest acquired in 1957, not the ¼ Life Estate interest she acquired under Loyd Jr.'s will in 1985.

After delivery of the 1990 Deed, the Parker Interest in Cottonwood was owned as follows:

| Owner | Nature of Interest | Percentage |
|-------|--------------------|-----------| 
| Ruthie | Separate –acquired in 1956 (Held in Trust) | 16.666% (1/6) |
| Ruthie | Life Estate-acquired in 1985 (remainder to Loyd III and Pamela) | 25.00% (1/4) |
| Loyd III | Separate--acquired in 1990 | 12.50% (1/8) |
| Pamela | Separate--acquired in 1990 | 12.50% (1/8) |
| | Total | 66.666% (2/3) |

**D.** **The 1998 Gift Deed**

In 1998, according to Lois Kapp, the Parker family's long-time accountant, Kapp suggested to Loyd III that he gift to his daughters, Elise and Allison, the undivided 1/8 interest Loyd III received from Ruthie in the 1990 Deed and referenced in the 1993 Correction Deed. On June 5, 1998, Loyd III signed a warranty deed conveying by gift to Elise and Allison "all of [his] right, title and interest in and to" the described Cottonwood tracts of land and described the consideration therefor as "love and affection which Grantor bears toward the Grantee herein" ("1998 Gift Deed"). The language in the deed did not expressly reference either the 1/8 interest Loyd III acquired from Ruthie in 1990 or Loyd III's 1/8 remainder interest.

After the 1998 conveyance, Loyd III filed a gift tax return, in which he described the gift as follows: "The property given to the two donees represents one sixteenth of the entire land in the tract for each of the donees." The gift tax return did not include any reference to the 1/8 remainder interest. Kapp testified that if Loyd III had also gifted his remainder interest, it was required to be listed and valued in the gift tax return.

Moreover, after the 1998 conveyance, Loyd III, Elise, and Allison signed three oil and gas leases with Clay Johnson. Loyd III signed these leases as "Remainderman of Ruthie's Young Parker life estate." Likewise, the division order issued in 1999 listed Loyd III as remainderman and Elise and Allison as owners of only 1/16 each.

According to Kathy, after the 1998 conveyance, the Parker Interest in Cottonwood was owned as follows:

| Owner | Nature of Interest | Percentage |
|-------|--------------------|-----------|
| Ruthie | Separate- Held in Trust acquired in 1956 | 16.666% (1/6) |

| Ruthie | Life Estate-acquired in 1985 (remainder to Loyd III and Pamela) | 25.00% (1/4) |
|--------|--------------------------------------------------------|--------------|
| Pamela | Separate-acquired in 1990 | 12.50% (1/8) |
| Allison | Separate-acquired in 1998 | 6.25% (1/16) |
| Elise | Separate-acquired in 1998 | 6.25% (1/16) |
| | Total | 66.666% (2/3) |

### E. Loyd III and Pamela Inherit Their Reminder Interests In Cottonwood Upon the Expiration of Ruthie's Life Estate in 2006.

Ruthie's death in 2006 extinguished her life estate, which permitted Loyd III and Pamela to inherit their remainder interest in Cottonwood. According to Kathy, upon Ruthie's death, the Parker Interest in Cottonwood was owned as follows:

| Owner | Nature of Interest | Percentage |
|-------|--------------------|------------|
| Pamela | Separate-acquired in 1990 and 2006 | 33.333% (1/3) |
| Loyd III | Separate-acquired in 2006 | 20.833% (5/24) |
| Allison | Separate-acquired in 1998 | 6.25% (1/16) |
| Elise | Separate-acquired in 1998 | 6.25% (1/16) |
| | Total | 66.666% (2/3) |

From 2006 to December 2015, Elise paid property taxes on Cottonwood based on a 1/16 ownership interest; received and accepted payments from Cottonwood's grass tenant based on her 1/16 ownership interest; and participated in the purchase of approximately 2,000 adjacent acres in proportion to her 1/16 ownership interest. In 2010, a title opinion was issued opining Elise and Allison each owned an undivided 1/16 interest. Based on this ownership, the parties executed three oil and gas leases and accepted bonus payments in accordance with this division.

In approximately 2013, however, after another entity succeeded to the existing leases, it issued a division order crediting Elise with ownership of a 1/8 interest, rather than 1/16. Elise's husband, Tommy Jordan, emailed the entity questioning its calculations, writing, "[I]n your email

5

you state that your records indicate Elise owns 1/8 of the minerals in the tract. Our records (see attached) indicate she actually owns 1/16." Tommy then emailed Bob McCamey, the family member who historically managed Cottonwood, writing, "As for our interest, it should be what Loyd [III] deeded to [E]lise- 1/16 (.0625)." McCamey asked the new entity for clarification of its calculations. Thereafter, an "option division agreement" was issued that was consistent with the family's long-held beliefs as to their ownership interests, i.e., Elise owned 1/16 and Loyd III owned 5/24.

On August 20, 2013, after receiving the corrected option division agreement, Patrick Clifton sent an email to Cottonwood owners asking them to verify their "decimal interest" by signing and scanning back the option division agreement to Brenda Guzman. Loyd III forwarded Patrick's email to Kapp, noting, "These % look correct and add up to me. Thought I would send it on to you to verify." The attachment to Loyd III's email listed him as owning 0.2083334 (5/24), and Elise and Allison were listed as owning 0.0625 (1/16) each. After Kapp confirmed the percentages were correct, Loyd III signed the option division agreement. Elise and Allison also signed, acknowledging their ownership of 1/16 each. Payments were subsequently issued based on Elise's 1/16 ownership interest. Elise received the same bonus payment as in 2010.

**F.      Loyd III Dies in 2014 and Kathy Inherits Loyd III's Property Interests.**

Loyd III died in 2014. The probate court admitted his will to probate and appointed Kathy executor of the estate. Kathy was bequeathed Loyd III's real and personal property, including his 5/24 undivided interest in Cottonwood, as trustee under Loyd III's will. Following Loyd III's death, according to Kathy, the Parker Interest in Cottonwood is:

| Owner | Nature of Interest | Percentage |
|-------|--------------------|------------|
| Pamela | Separate- | 33.333% (1/3) |

| | acquired in 1990 and 2006 | |
|---|---|---|
| Kathy | Separate-acquired in 2014 | 20.833% (5/24) |
| Allison | Separate-acquired in 1998 | 6.25% (1/16) |
| Elise | Separate-acquired in 1998 | 6.25% (1/16) |
| | Total | 66.666% (2/3) |

**G.  After Loyd III's death in 2014, Elise acknowledges her 1/16 ownership until February 2016.**

Following Loyd III's death in 2014 until December 2015, Elise continued to acknowledge her 1/16 ownership interest by accepting lease related payments in proportion to only her 1/16 interest. And when the Young & Parker Partnership was terminated in December of 2015, Elise accepted that her interest therein was limited to 1/16.

In 2016, however, after Endurance Resources leased Cottonwood and issued division orders to the owners, they credited Elise with the 1/8 remainder interest. Elise's husband Tommy Jordan once again questioned Bob McCamey about the calculation. Jordan then responded to Endurance and pointed out its error in calculating Elise's ownership, stating that Elise only owned an undivided 1/16 interest. Endurance responded that Elise, Allison, and Kathy could stipulate as to the correct allocation of their interests, but instead of doing so, on or about February 11, 2016, Elise signed the division order based on the higher interest percentage.

On March 2, 2016, Kathy filed this trespass to try title and declaratory judgment action. Unlike Elise, Allison does not assert a claim to the remainder interest. Allison agrees with Kathy that she and Elise own only an undivided 1/16 interest each in Cottonwood.

STANDARD OF REVIEW

We construe a deed as a matter of law only if it is unambiguous. *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018). If a deed is subject to two or more reasonable interpretations, it is ambiguous. *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 765 (Tex. 2018);

*BNSF Railway Co. v. Chevron Midcontinent, LP.*, 528 S.W.2d 124, 128 (Tex.App.—El Paso 2017, no pet.). An ambiguity does not arise simply because the parties interpret the deed differently. *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743-44 (Tex. 2020). A deed is not ambiguous if it can be given a definite or certain meaning as a matter of law. *URI,* 543 S.W.3d at 765. "When construing an unambiguous deed, our primary duty is to ascertain the intent of the parties from all of the language within the four corners of the [instrument]." *Wenske v. Ealy,* 521 S.W.3d 791, 794 (Tex. 2017). The courts will enforce an unambiguous instrument as written; and, in the ordinary case, the writing alone will be deemed to express the intention of the parties. *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 728 (Tex. 1981). Further, "we consider the words used in light of the facts and circumstances surrounding the instrument's execution." *U.S. Shale Energy II, LLC v. Laborde Properties, L.P.*, 551 S.W.3d 148, 151 (Tex. 2018). [Internal quotations marks and brackets omitted]. "We may consider such circumstances to the extent they inform, rather than vary from or contradict, the instrument's text." *Id.* (*citing URI,* 543 S.W.3d at 767) [Internal quotations marks omitted].

We conduct a *de novo* review of the trial court's rulings on summary judgment. *Koopmann,* 547 S.W.3d at 865. "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* "On cross motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Id*. "When the trial court grants one motion and denies the other, the reviewing court should determine all questions presented and render the judgment that the trial court should have rendered." *Id*.

To grant summary judgment in favor of Elise the trial court had to find that: (1) the 1998

Gift Deed conveyed to Elise and Allison, Loyd III's remainder interest in Ruthie's Life Estate; and (2) Kathy's suit for reformation was barred by the statute of limitations; and (3) Elise was not estopped from claiming Loyd III's remainder interest.

**DISCUSSION**

It is undisputed Loyd III intended to gift to his daughters his 1/8 ownership interest in Cottonwood, acquired from Ruthie in 1990. It is also undisputed that the gift deed omits any clear or express reference to Loyd III's remainder interest in Ruthies' Life Estate or his desire to convey it at that time. The parties dispute only the legal effect such an omission has on the breadth of the 1998 conveyance.

In Texas, deeds are construed to confer upon the grantee the greatest estate that the terms of the instrument will allow. *Lott v. Lott*, 370 S.W.2d 463, 465 (Tex. 1963). A deed will pass whatever interest the grantor has in the land, unless it contains language showing the intention to grant a lesser estate. *Sharp v. Fowler*, 252 S.W.2d 153, 154 (Tex. 1952). However, when conveying a future or expectancy interest in property, "an instrument is not given effect as an assignment of an expectancy or future interest unless it clearly manifests the intention of the prospective heir to sell, assign or convey his expectancy or future interest." *Clark v. Gauntt*, 161 S.W.2d 270, 273 (Tex. 1942); *see also McConnell v. Corgey*, 262 S.W.2d 944, 947 (Tex. 1953)(same); *see also Cavazos v. Cavazos*, 246 S.W.3d 175, 180 (Tex.App.—San Antonio 2007, pet. denied)("There is no dispute that a prospective heir may convey an estate that commences in the future, in the same manner as by a will. . . . . But, such an instrument must clearly manifest the intention of the prospective heir to sell, assign or convey his expectancy or future interest.").

In her first issue, Kathy contends in 1998 Lloyd III's remainder interest was still only a

9

*future ownership* interest because Ruthie's Life Estate had yet to expire. As such, Kathy argues, for the deed to convey that future ownership interest it must contain clear and express language manifesting Lloyd III's intent to do so. And because the 1998 Gift Deed lacked such language, Elise's claim to the remainder is without merit.

Relying primarily on mineral interest cases, Elise responds that the gift deed required no special language to effectuate conveyance of the remainder interest, but to the contrary, required special language in the deed expressly *reserving* the remainder interest to the grantor. *See e.g. Eastin v. Dial*, 288 S.W.3d 491, 500 (Tex.App.—San Antonio 2009, pet. denied)("A warranty deed will pass all of the estate owned by the grantor at the time of the conveyance, unless there are reservations or exceptions that reduce the estate conveyed. . . . Reservations of minerals are effective only if made in clear language.").

We believe the cases cited by Kathy are controlling here. We therefore hold that in 1998 Loyd III's remainder interest was only a future ownership interest that required clear and express language manifesting an intent to convey it. Because the 1998 Gift Deed lacks such language it did not operate to convey the remainder interest to Elise or Allison. We find the cases cited by Elise distinguishable. Before discussing those cases, however, it is necessary to address Elise's claim that Kathy's suit is barred by the four-year statute of limitations.

## I.      The Statute of Limitations Does Not Bar Kathy's Suit.

Kathy contends she brought an action for trespass-to-title and, alternatively, a claim for deed reformation. Kathy's live petition alleged both causes of action and they each rely on a different line of facts and seek different remedies. The trespass-to-title claim seeks to enforce Kathy's superior right over Elise's claim to Loyd III's remainder interest, which Kathy alleges

Loyd III acquired at the end of Ruthie's Life Estate in 2006 and which she inherited through Loyd III's will after his death in 2014. The trespass-to-title claim is necessarily grounded in the factual allegation that Loyd III *did not* convey to Elise his remainder interest in 1998. Under these facts, Kathy's standing to enforce her right to the remainder interest did not arise until she inherited it upon Loyd III's death in 2014. Accordingly, Kathy's trespass-to-title claim could not have arisen sooner than 2014.

Kathy's claim for deed reformation, which was pled in the alternative, alleged *if* the language in the 1998 gift deed is interpreted to convey to Elise Loyd III's remainder interest then it was *mistakenly* conveyed and Kathy sought to correct that language to reflect Loyd III's true intent. Elise focuses only on Kathy's alternative claim for deed reformation and contends any claim that seeks reformation is barred by the four-year statute of limitations because the limitations period runs from the execution of the gift deed in 1998 and Kathy's suit filed in 2016 was filed outside the applicable limitations period. *See Cosgrove v. Cade*, 468 S.W.3d 32, 37 (Tex. 2015)(holding that discovery rule does not apply "[i]n plain-omission cases . . . [and] Parties are charged as a matter of law with knowledge of an unambiguous deed's material omissions from the date of its execution, and the statute of limitations runs from that date.")

However, we believe Elise's reliance on *Cosgrove* is misplaced. In *Cosgrove*, the parties entered into a purchase contract that expressly specified the "sellers [would] retain all mineral rights." *Cosgrove*, 468 S.W.3d at 35. The deed, however, omitted this reservation, which went undiscovered by the sellers for over four years. The court was unwilling to apply the discovery rule to those facts because when a reservation of rights has been obviously negotiated by the parties and expressly included in the contract, but is nevertheless completely omitted from a deed, "the

presumption of knowledge becomes irrebuttable*." Id*. at 37.

Here, the instrument at issue resulted from a gift not a purchase contract. Consequently, there were no negotiations in which the parties engaged, nor was there written confirmation of an "agreement" in which the reservation was clearly discussed or agreed upon by the parties that would make knowledge of an *omission* of such a reservation in the deed "irrebuttable." These facts place this case outside of the "plain omission" category of cases to which *Cosgrove* applies.

Moreover, *Cosgrove* acknowledges a distinction between "plain omission" cases and those cases involving "mistakes about the legal effect of a deed's terms" to which the discovery rule remains available. *See id*. at 37 ("we [have] distinguished mistakes about the legal effect of a deed's terms from instances where mineral rights had been entirely omitted from the deeds, a fact plainly evident")(*citing McClung v. Lawrence*, 430 S.W.2d 179, 181-82 (Tex. 1968)(holding in cases where parties may have been "mutually mistaken as to the legal effect of the deed in question," limitations runs from "when the mistake was, or in the exercise of reasonable diligence should have been discovered"). Here, the parties dispute the legal effect of the language used in the deed. Consequently, even if Kathy's suit was only a suit for reformation, which it is not, we do not believe it would be barred by the four-year statute of limitations. The facts in this case are more akin to those in *McClung,* which does not prohibit application of the discovery rule, than *Cosgrove*, and Kathy did not or could not have discovered the alleged mistake until Elise claimed an interest to the remainder in 2016.

In any event, in light of our determination that Loyd III did not convey his remainder interest to Elise or Allison in 1998, and it is undisputed Kathy could not have acquired the remainder interest until Loyd III's death in 2014, and Elise did not manifest her belief she acquired

12

the remainder interest via the gift deed until 2016, Kathy's suit is not barred by the four-year statute of limitations. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 16.051 ("Every action for which there is no express limitations period, *except* an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues.")[Emphasis added]; *McClung*, 430 S.W.2d at 181-82.

## II. Vested Remainder Interests Are Future Interests Requiring Express Language To Be Legally Conveyed.

On the merits, Elise argues that in 1998, Loyd III's remainder interest was actually a "present vested interest" that required "no special conveyance language." While we believe Loyd III's remainder interest in 1998 was indeed "vested," and therefore transferrable, it was a *future* interest nonetheless, and as such required clear language manifesting an intent to convey it. *Clark,* 161 S.W.2d at 273; *McConnell,* 262 S.W.2d at 947; *Cavazos,* 246 S.W.3d at 180. At oral argument, Elise's counsel maintained whether the remainder interest is a future interest is irrelevant to our inquiry because, according to Appellee, it is clear vested remainders are capable of being conveyed in the same way as any other present ownership interest. We disagree. Future interests have been treated differently since the common law. *See Glenn v. Holt*, 229 S.W. 684, 687 (Tex. 1921)(discussing statute now codified in TEX.PROP.CODE ANN. § 5.041, which was enacted to abrogate the common-law rule that a freehold to commence in future could not be conveyed). As discussed below, while a vested remainderman has a present right to *transfer* his future interest, he must manifest his intent to do so in clear and express language.

### A. Present Interest vs. Future Interest

"A present interest is an ownership interest in property that entitles the owner to possession or enjoyment of the property." RESTATEMENT (THIRD) OF PROPERTY (WILLS & DON. TRANS.)

§ 24.1 (2011). A future interest in property, on the other hand, "is an ownership interest . . . that does not currently entitle the owner to possession or enjoyment of the property." *Id*. at § 25.1. In other words, a present interest in property means an owner can currently exercise his ownership rights to possess and enjoy the property, while a future interest recognizes that "[t]he owner's right to possession or enjoyment is *postponed* until some time in the future[.]" *Id.* at §§ 25.1, 25.3. A future interest is an ownership interest that can only be exercised upon the happening of a future event, after which the interest becomes a present interest. *Id.*

**B.     Contingent Future Interest vs. Vested Future Interest.**

Future interests are either "contingent" or "vested." RESTATEMENT (THIRD) OF PROPERTY (WILLS & DON. TRANS.) § 25.3 (2011). A "contingent" interest is a future interest where the future event is uncertain to occur and which therefore may not result in the owner taking possession or enjoyment. *Id.*; *see also Davis v. Vidal*, 151 S.W. 290, 293 (Tex. 1912)("The very definition of a contingent estate as distinguished from a vested estate is that the right to its enjoyment is to accrue on an event which is dubious and uncertain.")[Internal quotations marks and emphasis omitted]. A "vested" interest, on the other hand, is a future interest where the future event is certain to occur, such as the death of a testator. *See Bufford v. Holliman*, 10 Tex. 560, 572 (1853)("the remaindermen took a vested interest at the death of the testator.").

**C.     Remainder Interests are Future Interests.**

A "remainder" is a future ownership interest that another holds (either contingent or vested) after the termination of a prior interest, for example, after a life estate. *See* RESTATEMENT (FIRST) OF PROPERTY § 156 (1936)("a remainder is any future interest limited in favor of a transferee in such manner that it can become a present interest upon the expiration of all prior interest

14

simultaneously created . . .”). A “vested” remainder is “a present right of *future* enjoyment, a fixed interest, with only the right of possession *postponed* until the ending of a particular estate.” *Caples v. Ward,* 179 S.W. 856, 858 (Tex. 1915)[Emphasis added]; *see also Moody v. Pitts*, 708 S.W.2d 930, 934 (Tex.App.—Corpus Christi 1986, no writ)(where life estate terminates upon death with remaining corpus to be distributed to the remaindermen (the four children), “the children’s *future interests* . . . are vested remainders.”)[Emphasis added]; *see also Caples,* 179 S.W. at 858 (an uncertainty in the amount of the *future* estate remaining “undisposed of at the expiration” of the intermediate estate does not render the remainder contingent).

Despite these cases clearly characterizing a “remainder interest” as a *future* interest, Elise argues the remainder interest in this case was nevertheless “a vested, *present* interest capable of conveyance” *without* “special conveyance language.” While we agree a vested remainder interest is capable of conveyance, our review of the cases cited by Elise does not lead us to conclude that the remainder interest in this case is a *present ownership* interest requiring no express language of the grantor’s intent to convey it.

In support of her contention that no special language is required to convey a vested remainder interest, Elise cites to *Jinkins v. Jinkins*, 522 S.W.3d 771 (Tex.App.—Houston [1st Dist.] 2017, no pet.), but *Jinkins* does not hold special language is unnecessary to convey vested remainder interests. *Jinkins* merely holds a vested remainder interest *is* transferrable. *See id*. at 780 (“A vested remainder may be transferred.”). Elise also relies on *Caples* for the proposition “courts hold a remainder interest as vested rather than contingent, when it can reasonably be construed as vested.” *Caples*, 179 S.W. at 858. Once again, we do not doubt this principle, but *Caples* does not advance Appellee’s argument because *Caples* does not hold remainder interests are *present*

15

*ownership* interests that can be conveyed without express language.

In *Caples*, the question was whether a remainderman's interest in property was subject to execution to collect a debt, even though the life estate had not yet expired and the extent of the remainderman's interest was undetermined because the will gave the life tenant the power to sell the property before the life estate's expiration. *Caples*, 179 S.W. at 857. In holding the remainder interest was vested, not contingent, and therefore subject to execution against the remainderman, the court observed the will "invests [the remainderman] with a present interest and right to its future enjoyment . . . [and that a power of sale by the life tenant] does not raise the [life] estate to a fee [simple]." *Id.* at 858. We interpret this language in the court's opinion to say remaindermen have a present right to transfer a vested remainder interest even when the life tenant has the power to sell the property prior to the expiration of the life estate because the power of sale does not change the fact the will created only a life estate, and did not convey to the life tenant title to the property in fee simple. We do not understand *Caples* to say a remainder interest is a *present ownership* interest in the property that would permit conveyance absent express language manifesting an intent to do so.

Elise also cites to *Medlin v. Medlin*, 203 S.W.2d 635, 641 (Tex.App.—Amarillo 1947, writ ref'd) for the assertion a vested remainder interest is a present ownership interest in the property. In *Medlin*, the court was asked to resolve a dispute between family members over the construction of a will that established a life tenancy for the testator's wife and left a remainder interest to the testator's children. One of the questions in *Medlin* was whether the will extinguished the remaindermen's present vested interest in the estate property by giving the life tenant the power to sell the property before the life estate expired. *Medlin*, 203 S.W.2d at 641. The court held that it

16

did not. *Id. Medlin*, then, stands only for the proposition a life tenant's ability to sell or otherwise dispose of the estate during the life estate does not divest the remaindermen of their "vested" future interest in the property or prevent the remaindermen from transferring that interest. *See id*. ("[I]n our opinion, the trial court erred in holding that the remaindermen's interest of the appellants in the property is not a vested interest."). *Medlin* is silent, however, as to *how* that interest is legally conveyed.

Likewise, *Gibbs v. Barkley*, 242 S.W. 462, 465 (Tex. Comm'n App. 1922), observed that the remainder interest in that case was a "vested" and "fixed interest" which would "take effect in possession after the termination of the estate of the life tenant." *Id*.; *see also* RESTATEMENT (THIRD) OF PROPERTY (WILLS & DON. TRANS.) at § 25.1 (2011)("A future interest is an ownership interest in property. . . [where] [t]he owner's right to possession or enjoyment is postponed until some time in the future . . ."); *see also id.* at § 25.3 ("A future interest is vested if it is certain to take effect in possession or enjoyment."). *Gibbs* then stands only for the proposition that a remainder interest is a vested future interest and can be conveyed.

Here, as previously stated, we do not doubt Loyd III's remainder interest was vested or he possessed a present right in 1998 to *transfer* his future ownership interest if he so desired. The question here is *whether* he did so. We believe the answer is no. Even though Loyd III's remainder interest was "vested" by virtue of Loyd Jr's (testator) death in 1985 and was therefore *capable* of being transferred in 1998, because Ruthie's Life Estate had yet to expire, the remainder interest was still only a *future* ownership interest, which would not ripen into a present ownership interest until Ruthie's death. When an instrument purports to transfer a vested remainder interest under these circumstances, it must contain clear and express language demonstrating the grantor's intent

17

to do so. *Clark*, 161 S.W.2d at 273; *McConnell*, 262 S.W.2d at 947; *Cavazos*, 246 S.W.3d at 180.

Because the 1998 gift deed lacked such language, we believe it unambiguously transferred to Loyd III's daughters *only* his 1/8 *present* ownership interest in Cottonwood, received from Ruthie in 1990, and it did not operate to transfer his 1/8 remainder interest in Cottonwood, which Loyd III did not acquire until the expiration of Ruthie's Life Estate in 2006. Our holding is further supported by circumstances surrounding the instrument's execution, which make clear Loyd III did not intent to convey to his daughters his remainder interest via the 1998 gift deed.

We therefore sustain Kathy's first issue, reverse the trial court's order granting summary judgment to Elise, and render judgment in Kathy's favor. Because the first issue is dispositive of the case, we need not address her remaining issues. TEX.R.APP.P. 47.1.

January 21, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.

18